OPINION OF THE COURT
Thomas H. Scuccimarra, J.
This claim arises from the death of Shirley Danney on July 4, 2002, allegedly as the result of negligence and medical malpractice in connection with surgery performed at Downstate Medical Center on July 3, 2002. A notice of intention to file a claim was served on defendant on October 1, 2002, within 90 days of accrual. On May 2, 2003, Ms. Danney’s daughter, Erica Legall, was appointed administratrix of her estate by the Surrogate of Kings County. The instant claim was filed on June 1, 2004. Defendant’s answer was filed on July 1, 2004 and, after a conference was held at which it was agreed that disclosure would proceed in conjunction with proceedings in the pending Supreme Court action against the physicians involved, claimant made the instant motion to strike certain affirmative defenses from the answer. In response, defendant submitted the instant cross motion, seeking an order “pursuant to CPLR Sections 214, 214-a and 3211, Court of Claims Act Sections 10 and 11, and Sections 206.6 (a) & (b) of the Uniform Rules of the Court of Claims, dismissing the Claim.”
According to the notice of intention, a vascular shunt procedure performed at Downstate on July 3, 2002 was performed in an improper and unskillful manner, such specifically consisting of:
“The failure to order or make timely and proper incisions and excisions, failure to order or use a proper shunt, failure to order or take timely and proper diagnostic tests prior to surgery or prior to termination of surgery, failure to pay timely and proper attention to results of same, failure to order or make timely and proper diagnostic tests following surgery, failure to pay timely and proper attention to findings of same, failure to order or provide timely and proper post-operative monitoring and *802 supervision, failure to order or provide timely and proper post-operative recovery, failure to order hospitalization to monitor patient’s post-operative progress, failure to monitor patient’s post-operative progress timely and properly, failure to diagnose or treat post-operative hemorrhage, improper and premature discharge of patient from hospital care, abandonment of patient needing emergency care, failure to order or perform timely and proper surgery upon patient, failure to review timely and properly surgeon’s plans for patient’s treatment, failure to order or provide timely and proper training to surgeons, physicians and staff treating patient, failure to order or provide timely and proper supervision for hospital staff surgeons, physicians, nurses, nurses’ aides and other support staff monitoring patient’s progress and treating patient” (notice of intention 1Í 3).
It is alleged that, as a result of the improper treatment and premature discharge, Ms. Danney suffered a fatal postoperative hemorrhage at her home in the early morning hours of July 4, 2002 (id. If 4). The notice expresses the intention to commence an action seeking damages for pain and suffering and wrongful death arising out of the alleged facts (id. 1i 5).
Claimant seeks an order striking the first, second, third, eighth and tenth affirmative defenses. The first affirmative defense alleges that the court lacks jurisdiction over the claim because “it fails to set forth the same matters originally purported in the notice of intention.” The second affirmative defense alleges that the claim fails to comply with section 11 of the Court of Claims Act in that it fails to contain “an adequate description of the condition alleged in the claim as a cause of the. incident, and the State’s conduct in regard to it.” The third affirmative defense alleges that the claim fails to comply with section 11 by failing to include “sufficient particularization of the nature of the incident alleged in the claim, the manner in which it occurred, and the damages claimed.” The eighth affirmative defense alleges that the claim fails to comply with Uniform Rules for the Court of Claims (22 NYCRR) § 206.6 in that it fails to specify the damages claimed with particularity and the tenth affirmative defense alleges that the court lacks jurisdiction over any claim for lack of informed consent because such was not contained in the notice of intention.
The first three affirmative defenses all arise from the differences between the notice of intention and the claim. Part of the *803 problem is that the claim — which alleges that defendant ordered and provided hospital care to the decedent from January 4, 2002 through July 4, 2002 and that such was provided in a negligent manner — purports to cover a much greater time period than the notice of intention, which is limited to the events of July 3, 2002 and Ms. Danney’s subsequent hemorrhage and fatal exsanguination. The claim also purports to contain a cause of action for lack of informed consent, which was not mentioned in the notice of intention.
Additionally, defendant contends that the allegations of the claim are insufficient to comply with the requirement that a claim set forth its “nature,”[1] variously characterizing the allegations as “vague,” “non-specific,” “boilerplate” and “conclusory.” However, the allegations with respect to the surgery and follow-up care were adequately and specifically set forth in the notice of intention and were also contained in the claim. While defendant is correct in arguing both (1) that the notice of intention made no mention of any other time period, and (2) that the contents of the claim with respect to anything other than July 3 and 4, 2002 are insufficient to indicate their nature, to the extent that the claim is based on the events of July 3 and 4, 2002, claimant has adequately and fully set forth the nature of the claim within the meaning of section 11 (b).
Where defendant is incorrect is in contending that the claim of malpractice based on negligent performance of the surgery and premature discharge, adequately and specifically set forth in the notice of intention, is somehow tainted by its association, in the subsequent claim, with the other allegations of negligence which were, indeed, overly broad and general. The jurisdictional document in this claim was the notice of intention.[2] Served within 90 days of accrual, it gave adequate notice of the precise nature of the claim as is required by section 11 (b). (See, e.g., Klos v State of New York, 19 AD3d 1173 [2005]; *804 Rodriguez v State of New York, 8 AD3d 647 [2004]; Wharton v City Univ. of N.Y., 287 AD2d 559 [2001].)[3] That claimant, unfortunately, chose to later submit a claim that went way beyond the parameters of the notice of intention does not mean, as defendant suggests, that the court lacks jurisdiction over the entire claim, but instead means that to the extent that the claim goes beyond the notice of intention, the court lacks jurisdiction.
In its cross motion, defendant also argues that the claim is jurisdictionally defective because it fails to demand a specific amount of damages, instead demanding judgment for “such sums as the Court herein finds fair, just and reasonable.” Defendant submits that “a complete failure to state the amount of damages does not allow for an argument as to whether there was substantial compliance with Section 11 or not. In this case, there was no compliance with the Section 11 (b) requirement which necessitates a statement as to the amount of damages. Accordingly, the Claim is jurisdictionally defective and therefore, must be dismissed” (affirmation in support of cross motion 1i 18). In support of this contention, defendant relies on the decision in Lepkowski v State of New York (1 NY3d 201 [2003]) as well as the proposition that if a claimant has failed to properly invoke the jurisdiction of this court, such defect may not be cured by an amendment of the claim (Grande ,v State of New York, 160 Misc 2d 383 [1994]). While defendant’s reading of Lepkowski may be superficially appealing, the conclusion that it draws from that decision — i.e., that this claim seeking damages for personal injuries and wrongful death resulting from medical malpractice, properly before the court in all other regards, must be dismissed for lack of jurisdiction solely because the demand for relief is not expressed monetarily — does not, ultimately, withstand analysis.
Claimant responds to the cross motion by arguing that defendant’s conclusion as to the meaning and effect of Lepkowski on the instant claim not only “defies logic” (affirmation in opposition to cross motion 1i 10) but is not supported by precedential Court of Claims jurisprudence surrounding the meaning and effect of the ad damnum clause, or the lack thereof. Review of the case law supporting claimant’s position begins with Chalmers & Son v State of New York (271 App Div 699 [1947]), where the Appellate Division, Third Department, found *805 that a duly served and filed notice of intention to file a claim could be deemed to be a claim. The Court noted that “[t]he only statutory distinction between the notice of intention to file a claim and the claim itself is that in the notice of intention it is unnecessary to allege the items of damage and the amount claimed, whereas the claim must contain that information” and found that where the notice of intention contained sufficient information to fulfill the purpose of Court of Claims Act § 11, it should have been treated as a claim (id. at 701). Although the notice of intention in Chalmers did contain a demand for monetary relief, the principle was applied in Barski v State of New York (43 AD2d 767 [1973]) to a notice of intention that “set forth all of the items required by section 11 to be stated in a claim, except the total sum claimed” (id. at 767). The Court noted that the sole distinction between Barski and Chalmers was that the notice of intention in Barski did not set forth an amount claimed and stated that “the Court of Claims held ‘the sum claimed has no bearing upon the State’s knowledge and investigation (McCabe v State of New York, 58 Misc 2d 823). In fact, the amount alleged as damages in a tort claim often bears little relationship to the actual damages incurred.’ ” (Barski, 43 AD2d at 768.) We agree that the failure to set forth the total sum claimed in this case is not a fatal defect to a finding that the notice of intention was actually a notice of claim. (Id.; see also Liberty Mut. Ins. Co. v State of New York, 121 AD2d 694 [1986]; Wilson v State of New York, 117 Misc 2d 608 [1983].)[4]
*806 In Muller v State of New York (184 Misc 2d 500 [2000]), the court addressed the question of whether the Chalmers remedy, codified in Court of Claims Act § 10 (8) (L 1993, ch 405), had continuing viability after the elimination of the requirement that a notice of intention be filed with the court (L 1995, ch 466). In granting the claimant’s motion under section 10 (8) (which at the time required filing of the notice of intention as a predicate for relief)[5] notwithstanding that the notice of intention had not been filed as required by a literal reading of section 10 (8), Judge O’Rourke stated that:
£‘[S]uch questions must be resolved in favor of the claimant and in favor of justice requiring the matter to be heard by a court. New York State has a continuing course, from the Field Code to the CPLR, of liberal interpretation of our statutes to allow the courts to be available to even those confused by their intricacies” (184 Misc 2d at 503).
The notice of intention at issue therein did not contain a monetary demand, and the court noted that:
££[T]he failure of the notice of intention to specify the amount of damages sought is not fatal to this application where the notice was otherwise sufficient to apprise the State of the substance of the claim . . . Clearly, that defect can be remedied by the filing of an amended claim containing a demand for relief.” (Id. at 502.)
Defendant submits that all of the authority in support of claimant’s position is pre-Lepkowski and suggests that the result of that decision is to abrogate the long-standing principle that the failure of a claim to demand a specific amount of damages is not a jurisdictional defect but rather a pleading deficiency that can be remedied by amendment of the claim. The jurisdictional viability of the instant claim is dependent on whether defendant is correct in this regard, as is its ultimate fate since the time has passed in which a motion for permission to late file or deeming the notice of intention to be a claim could be entertained (Court of Claims Act § 10 [6], [8]; EPTL 5-4.1; CPLR 214-a).
*807 Lepkowski involved two consolidated claims brought by 767 individual claimants, former and current state employees, who alleged that the State owed them overtime compensation pursuant to the Fair Labor Standards Act of 1938. The Court found that the claims were jurisdictionally infirm for failing to comply with section 11 (b) in that they “fail to allege the times when and the place where the claims arose, any items of damage or the total sum claimed” (1 NY3d 201, 203 [2003]). The claims did not set forth when they accrued — “[a]ll that the State may guess from these allegations is that some or all of the 377 Lepkowski and 390 Abelson claimants worked some number of hours in excess of 40 in some or all of the work weeks over many months and years” (id. at 207) — or where they accrued— some of the claimants named the agency for which they worked; none identified the location. With respect to the items of damages and the amount sought, claimants alleged “only that they ‘seek recovery of all unpaid overtime compensation for all hours worked over 40 hours in a work week and not compensated at one and one-half times the regular rate’ ” (id. at 208). The Court found that in order to conform with section 11 (b)’s substantive pleading requirements,
“[t]hese claims were required, at the very least, to specify the state agency or department for which each claimant worked; the primary work location for each claimant; those work weeks in which each claimant worked overtime; the actual number of hours of overtime worked by each claimant during these work weeks; and the total sum of damages sought by each claimant as unpaid overtime as of the date of filing” (id. at 208-209).
The failure of the claims to include this information deprived the Court of jurisdiction to hear the merits of the claim.
Two significant distinctions between the facts of Lepkowski and the facts currently before the court are immediately apparent. The first arises from the very different nature of the respective claims and the damages sought in each. Lepkowski involved claimants who alleged that they did not receive proper compensation for hours worked but did not set forth when they worked, where they worked, how much they should have been paid, how much they were paid and how much they were owed. The amount of damages in each individual’s case was susceptible of precise mathematical computation and the absence of that amount, in each case, contributed to the inevitable conclusion *808 that the claims at issue therein were “insufficiently definite ‘to enable the State ... to investigate the claim[s] promptly and to ascertain its liability under the circumstances,’ which is the guiding principle informing section 11 (b)” (id. at 207, quoting Heisler v State of New York, 78 AD2d 767, 767 [1980]). Here, where claimant seeks damages for personal injury (pain and suffering) and wrongful death, the damages, other than funeral expenses (undoubtedly a minuscule portion of what would be awarded should the claim be meritorious), are not susceptible to mathematical calculation but instead are dependent on the court’s assessment of the evidence and the translation of things such as pain and suffering and the value of the decedent to her distributees into monetary terms. In such claims, the ad damnum clause is inevitably arrived at by claimant providing an unrealistically large figure that is, at the initiation of the litigation, simply made up, guided solely by the concern that it not be set too low.[6] There is no liquidated sum ab initio as there was in the Lepkowski claims.
More important, the Lepkowski claims utterly failed to provide any of the information required by section 11 (b), thus requiring the dismissal of the claim for lack of jurisdiction based on application of the “guiding principle” behind the requirements of section 11 (b): whether the claim or notice of intention provided sufficient information to afford defendant the timely opportunity to investigate the pertinent allegations and assess its potential liability, a long-standing staple of Court of Claims jurisprudence that was reaffirmed by the Lepkowski court. Here, in contrast, claimant provided all of the information necessary for defendant to fully investigate the matter and assess its potential liability, omitting only a monetary demand, an item that legions of decisions have characterized as irrelevant to the inquiry. Evaluated pursuant to section 11 (b)’s “guiding principle,” the claim herein passes the test.
Defendant, nevertheless, maintains that Lepkowski effected a fundamental change in the applicable law, requiring a checklist approach to the analysis, where if any one of the five items referred to in the statute is missing the claim must of necessity fail for lack of jurisdiction, without regard to whether the State *809 was afforded the timely opportunity to investigate and without the availability of what always has been the traditional remedy for a claim that lacked a demand for monetary relief, i.e., amendment of the claim to include such a demand. This position has met with varying judicial response. In Stewart v State of New York (Ct Cl, decision and order dated Sept. 24, 2004, Patti, J., Claim No. 107914, UID No. 2004-013-047), the court distinguished the medical malpractice claim before it, which did not contain a monetary demand, from the unpaid overtime compensation claim in Lepkowski, and struck the affirmative defense that the claim failed to conform to section 11 (b) and 22 NYCRR 206.6 (b). And in Michael v State of New York (Ct Cl, decision and order dated May 18, 2005, Marin, J., Motion No. M-68315), the court reaffirmed the continuing viability of the section 10 (8) remedy, specifically holding that a notice of intention not containing a monetary demand could be deemed a claim pursuant to section 10 (8), finding that such result “is not altered by . . . Lepkowski” (id. at 3). This court adopts the reasoning of those decisions, and of the entire history of Court of Claims jurisprudence surrounding the nature and purpose of the requirements of section 11 (b) and the irrelevancy of the ad damnum clause to such purpose in personal injury claims. The interpretation of Lepkowski urged by defendant goes far beyond the facts of that decision and runs counter to every established principle and policy favoring the resolution of legal disputes on the merits and reducing artificial barriers, based on distinctions without meaning, to access to the justice system.[7] This court declines to read Lepkowski in such a manner. To the extent that *810 other trial court decisions express or imply the opposite conclusion (see e.g. Kolnacki v State of New York, Ct Cl, decision and order dated Mar. 16, 2005, Hudson, J., Claim No. 103121, UID No. 2005-034-515), this court respectfully disagrees.
Nevertheless, section 11 (b) does require that a claim contain a demand for relief. As reflected in many of the decisions cited herein, the traditional remedy for a claim that otherwise contains the information required by the statute, and that fulfills the established purpose of the statute’s requirements, is to provide for the inclusion of an ad damnum clause in an amended claim, as claimant requested in response to defendant’s cross motion to dismiss. Since the absence of the ad damnum here did not create a jurisdictional infirmity, the availability of such a remedy is not foreclosed by Lepkowski.
Accordingly, the defendant’s cross motion to dismiss is granted to the extent that any allegations in the claim other than those pertaining to the events of July 3 and 4, 2002 (i.e., those contained in the notice of intention) are dismissed for lack of jurisdiction, as are the allegations relating to alleged lack of informed consent, and otherwise denied. Claimant’s motion is granted to the extent that claimant is directed to serve and file an amended claim within 40 days of the filing date hereof, said amended claim to consist of the factual allegations contained in the notice of intention, two separate causes of action, one for personal injury and one for wrongful death, and containing appropriate demands for monetary relief. Both the motion and cross motion are otherwise denied.

. Court of Claims Act § 11 (b) provides:
“The claim shall state the time when and place where such claim arose, the nature of same, and the items of damage or injuries claimed to have been sustained and the total sum claimed . . .
The notice of intention to file a claim shall set forth the same matters except that the items of damage or injuries and the sum claimed need not be stated. The claim and notice of intention to file a claim shall be verified in the same manner as a complaint in an action in the supreme court.”

. See Peralta v State of New York, Ct Cl, Feb. 10, 2004, Scuccimarra, J., Claim No. 107542, UID No. 2004-030-902.

. Interestingly, defendant did not contend in the answer that the claim was untimely because the notice of intention did not comply with section 11 (b), except with respect to informed consent.

. Accord Dowdell v State of New York, Ct Cl, Oct. 27, 2003, Collins, J., Claim No. 107658, UID No. 2003-015-364 (allegations of notice of intention were “clearly sufficient to apprise the defendant of the legal basis of the claim and afforded the State a reasonable opportunity to investigate the underlying allegations of negligence. The notice of intention merely lacked an [ad damnum] clause which may be addressed in an amended claim”); Partridge v State of New York, Ct Cl, May 31, 2000, Patti, J., Claim No. 90710, UID No. 2000-013-002 (“A pleading may comply with the Court of Claims Act requirements for stating a claim, even though it does not indicate the dollar amount that the claim seeks in damages”); Concourse Nursing Home v State of New York, Ct Cl, Mar. 21, 2000, Collins, J., Claim No. 101181, UID No. 2000-015-011 (“it is well settled that absent a demonstration of prejudice a motion to amend a claim to set forth the amount of damages sought will be granted [Barski v State of New York, 43 AD2d 767; cf Grande v State of New York, 160 Misc 2d 383]. The Barski holding will be followed here as the State has failed to allege or establish prejudice and the proposed amended claim will be considered the operative pleading for the purpose of determining the defendant’s motion to dismiss the claim for lack of subject matter jurisdiction”); Smith v State of New York, Ct Cl, Dec. 10, 2002, Fitzpatrick, J., UID No. 2002-018-196 (application pursuant to Court of Claims Act § 10 [8]: “The *806 only information which is not included is the total sum being claimed for damages. The Court does not find that the failure to state the amount of damages being sought is fatal to the application [See, Muller v State of New York, 184 Misc 2d 500, 502] since that defect can be remedied by the filing of an amended claim”).

. A requirement eliminated from the statute by Laws of 2001 (ch 205, §2).

. Thus the rationale for the elimination of the formal ad damnum in personal injury litigation other than in the Court of Claims (Siegel, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3017:13, 2005 Pocket Part, at 71, quoting Senate Introducer Mem in Support, Bill Jacket, L 2003, ch 694).

. Although CPLR 3017, which has long barred monetary demands from complaints against municipalities and those sounding in medical malpractice, and which was amended in 2003 to extend that ban to all personal injury actions, is not applicable in the Court of Claims, it does provide the reason why some claims in this court are filed without a monetary demand: some practitioners simply do not realize that the statute’s applicability to “every complaint, counterclaim, cross-claim, interpleader complaint, and third-party complaint” does not include claims brought pursuant to the Court of Claims Act. What this has meant historically is that some medical malpractice claims lack monetary demands. Undoubtedly, the frequency of personal injury claims generally that lack monetary demands will increase as the result of the 2003 amendment. If, as defendant urges, Lepkowski created a new defense that implicates subject matter jurisdiction and which, a fortiori, need not be raised in the answer but could be raised at any time (cf. Court of Claims Act § 11 [c]), potentially meritorious personal injury claims would be subject to dismissal and final adjudication based solely on the failure of the claim to include a figure that has been universally recognized as irrelevant to the purpose of section 11 (b).