OPINION OF THE COURT
Melvin L. Schweitzer, J.
*651 This is defendant’s motion to dismiss a medical malpractice and negligence claim for failure to satisfy section 11 (b) of the Court of Claims Act “and prevailing case law” and failure to comply with Uniform Rules for the Court of Claims (22 NYCRR) § 206.6 (b) and claimant’s cross motion for permission to amend her claim.
Claimant alleges she was a patient at University Hospital at SUNY Stony Brook from October 10, 2002 through October 13, 2002 when Dr. Michael Pearl performed a radical hysterectomy on her. Claimant further alleges the surgery and follow-up care were negligently performed resulting in permanent injuries to her ureters. She was readmitted to the hospital where she stayed from October 21, 2002 through November 9, 2002. She seeks damages for the resulting medical expenses, lost earnings and pain and suffering. The claim does not specify the amount of damages she seeks.
Claimant served a notice of intention to file a claim on January 6, 2003, within 90 days of accrual. Twenty months later she commenced this action, filing her claim on September 21, 2004 and serving it on September 23, 2004. Defendant served its answer on October 29, 2004.
The answer contains two affirmative defenses that contend the court lacks jurisdiction over the claim. The ninth paragraph states:
“To the extent that the claim alleges negligent hiring, training or supervision of personnel, the claim fails to comply with Court of Claims Act Section 11 by failing to include any particularization of the nature of the cause of action and the defendant’s conduct in regard to it, and therefore there is no proper claim over which the Court has jurisdiction.”
The eleventh paragraph states the claim “fails to comply with Section 11 of the Court of Claims Act by not stating the amount of damages claimed, and therefore, there is no proper claim over which the Court has jurisdiction.”[1]
Defendant’s motion to dismiss asserts the claim is “devoid of factual information regarding the nature of the medical mal *652 practice or negligence alleged,” “insufficient to constitute a cause of action under Section 11 (b),” and fails to “sufficiently particularize the nature of the incident, the State’s alleged negligent conduct . . . and the items of damages or injuries”[2] (Farrell affirmation 111! 6, 8); fails to state the amount of damages claimed, and to include information regarding “the total sum claimed” as required by section 11 (b) (id. 1i 10); and fails to contain a schedule of damages as required by section 206.6 (b) of the Uniform Rules for the Court of Claims (id. 1! 9).
Claimant argues the alleged deficiencies of the claim do not require dismissal, and cross-moves for an order permitting her to amend her claim by adding a demand for monetary relief. Defendant argues the court is without power to grant the relief sought by the claimant, characterizing the alleged deficiencies as “jurisdictional defects.” Defendant asserts “these pleading defects cannot be cured” because the underlying statute of limitations has passed (Farrell affirmation If 13).
*653 First, with respect to defendant’s reliance on section 206.6 (b), it is clear the court has the power to waive compliance with any of its rules, for good cause shown and in the interests of justice (see 22 NYCRR 206.1 [b]; Pryce v State of New York, Ct Cl, Mar. 17, 2005, Fitzpatrick, J., UID No. 2005-018-459).[3] Moreover, the Uniform Rules govern practice in the Court of Claims; they do not, and cannot, define or limit its jurisdiction.
Next, defendant argues the allegations of the claim are “insufficient to constitute a cause of action under Section 11 (b) of the Court of Claims Act and prevailing case law” in that they fail to state specific facts to enable the State to investigate the nature of the medical malpractice or negligence alleged, and to sufficiently “particularize” the nature of the incident and the State’s alleged conduct.
Court of Claims Act § 11 (b) requires a claim to “state the time when and place where such claim arose, the nature of same, and the items of damage or injuries claimed to have been sustained and the total sum claimed.” Since its enactment, courts have consistently held the statute’s requirements must be construed in light of their purpose, i.e., to provide the State with timely notice of the relevant facts and circumstances, thus affording the opportunity for a prompt investigation aimed at ascertaining the State’s potential liability.
The document served within the “prompt notice” period set forth in Court of Claims Act § 10 (3) was the notice of intention. Defendant does not contend that this action is untimely because the information comprising the allegations of the notice of intention did not comply with section 11 (b).[4] Subsequently, 23 months following accrual, claimant interposed her claim which contains the same allegations as the notice of intention, with somewhat more detail, and adds the items of damage (medical expenses, pain and suffering, lost earnings and related damages). This court finds that other than the lack of a demand for a specific sum of damages, there can be no serious contention *654 but that claimant complied with the requirements of section 11 (b).
The only real issue on this motion is whether claimant’s failure to include in the claim a demand for a specific sum of damages — otherwise timely and properly commenced in all respects — created a “jurisdictional defect” requiring final and irrevocable dismissal (without regard to what, in the absence of a jurisdictional issue, would be the dispositive issue on claimant’s motion to amend the claim to include a monetary demand, i.e., whether there would be prejudice to the State).
Although defendant cites no authority to support its argument that section 11 (b) mandates a jurisdictional dismissal, the court is cognizant of the growing number of cases where the State has relied on Lepkowski v State of New York (1 NY3d 201 [2003]) to support motions to dismiss claims for failure to include a total sum claimed. Judicial responses to these motions have been divergent.
Lepkowski involved two consolidated claims on behalf of 619 state workers for overtime pay. The Court of Appeals affirmed dismissal of the claims for noncompliance with section 11 (b), holding:
“These claims were required, at the very least, to specify the state agency or department for which each claimant worked; the primary work location for each claimant; those work weeks in which each claimant worked overtime; the actual number of hours of overtime worked by each claimant during those work weeks; and the total sum of damages sought by each claimant as unpaid overtime as of the date of filing” (Lepkowski, 1 NY3d at 208-209).
In the wake of this decision, some courts have concluded that any claim, otherwise in compliance with the statute but failing to include a monetary demand, now must be dismissed for lack of jurisdiction. These decisions construe Lepkowski as having articulated a profound change in judicial treatment of such claims. Other courts have held to the contrary; that failure to demand a specific amount of damages alone does not have jurisdictional implications and may be cured in an amended claim, as had been settled law prior to Lepkowski.
Exemplary of the former group of decisions is Kolnacki v State of New York (10 Misc 3d 781 [2005, Hudson, J.]), which involved a claim where the liability portion of the trial already *655 had been concluded[5] and in which the court had found the State partially liable for the incident where the claimant was injured (Kolnacki v State of New York, Ct Cl, July 12, 2004, Hudson, J., UID No. 2004-034-002). The court held, pursuant to Lepkowski, that if a claim does not contain each of the elements set forth in the statute, including an ad damnum, it must be dismissed for lack of jurisdiction regardless of whether the claim, as a whole, provided sufficient information to enable an investigation. To the same effect, the court in Matter of Anwar v State of New York (9 Misc 3d 1127[A], 2005 NY Slip Op 51813[U], *2 [2005, Marin, J.]) noted:
“Until recently, there had been no reported case in which dismissal was based solely on the failure to include the total sum of damages; in December of 2003, the Court of Appeals in Lepkowski v State of New York, 1 NY3d 201, 770 NYS2d 696, indicated that such result was necessarily implied.”
Although the court there obviously wrestled with the result, it ultimately held that dismissal was “unfair — but unavoidable.”[6] (Anwar at *1.)
On the other hand, two other recent Court of Claims decisions, Legall v State of New York (10 Misc 3d 800 [2005, Scuccimarra, J.]) and Peart v State of New York (Ct Cl, Dec. 23, 2005, Nadel, J., UID No. 2005-014-529), have rejected the contention that, post-Lepkowski, the lack of a monetary demand must be treated as a “jurisdictional defect” not amenable to cure by amendment. Both cases arose in personal injury claims that otherwise complied with the statute but lacked a demand for a specific sum of damages. Both courts concluded Lepkowski does not require such a result.
In Legall, the court noted two distinctions between the facts of Lepkowski and those in the medical malpractice claim before *656 it. Unlike the Lepkowski claimants — state employees who each sought unpaid wages and had liquidated claims for specific monetary sums — the amount demanded by claimants in tort claims, like those for personal injury, typically is not susceptible of mathematical calculation and often depends on the court’s translation into monetary terms of things such as pain and suffering. In fact, the amount sought in a pleading “often bears little relationship to the actual damages incurred” (Barski v State of New York, 43 AD2d 767, 768 [3d Dept 1973]). “More important,” the court noted in Legall, was the fact that the Lepkowski claims “utterly failed to provide any of the information required by section 11 (b)” (10 Misc 3d at 808) and thus did not comply with the statute. Lepkowski was viewed by the Legall court as not applicable to the situation where, as in Le-gall (and here), a claim comports with the statute in all respects except for absence of the “total sum claimed.”[7] (Id. at 807.)
The court in Peart also noted that the Lepkowski decision was based on the failure of those claims to provide sufficient information to permit an investigation, and observed:
“There is nothing in the Court’s opinion to suggest that had those claims included specific information as to where and when each of the . . . claimants had worked a specific number of overtime hours, that the absence of the total sum claimed alone would have rendered them insufficiently definite to enable the State to investigate.”
The Peart decision likewise addressed the argument that there is language in Lepkowski susceptible to the interpretation that is urged by defendant here — if a claim does not contain any one of five items specified in the statute, it must be dismissed for lack of jurisdiction regardless of whether, as a whole, it substantially complies with section 11 (b) by being sufficiently specific to enable the State to investigate. The court observed that if the Court of Appeals actually had intended to declare that “the State’s waiver of sovereign immunity is specifically conditioned upon any written claim providing specific information regarding each of the several components of the claim, that meaning was not necessary in order to decide Lepkowski” (id. [emphasis added]). In Lepkowski, none of the information nec *657 essary to comply with the statute (other than a general statement that the claim was to recover overtime wages) was present in the claim.[8] The appropriate treatment of an otherwise proper claim — lacking only the total sum claimed — was not at issue there; and, as the Peart court observed, “prior to Lepkowski ... no Court ever determined that the failure of a claim to include the total sum claimed was of jurisdictional significance.” It appears the reason for these disparate conclusions as to Lepkowski’s meaning is that different courts have looked at different portions of the decision as expressing the Court’s intention. On the one hand, the Court stated the following:
“The State’s waiver of immunity from suits for money damages is not absolute, but rather is contingent upon a claimant’s compliance with specific conditions placed on the waiver by the Legislature . . . Further, ‘[b]ecause suits against the State are allowed only by the State’s waiver of sovereign immunity and in derogation of the common law, statutory requirements conditioning suit must be strictly construed’ ... As relevant here, section 11 (b) places five specific substantive conditions upon the State’s waiver of sovereign immunity by requiring the claim to specify (1) ‘the nature of [the claim]’; (2) ‘the time when’ it arose; (3) the ‘place where’ it arose; (4) ‘the items of damage or injuries claimed to have been sustained’; and (5) ‘the total sum claimed’ ” (1 NY3d 201, 206-207 [2003] [citations omitted]).
The decisions holding absence of the total sum claimed to be jurisdictionally fatal, regardless of any other factor or consideration, appear to focus on this portion of the opinion.
On the other hand, in another portion of the opinion the Court held that the information in the claims before it was “insufficiently definite ‘to enable the State ... to investigate the claim[s] promptly and to ascertain its liability under the circumstances,’ which is the guiding principle informing section 11 (b) (Heisler v State of New York, 78 AD2d 767, 767 [4th Dept I960])”[9] (Lepkowski, supra at 207). The decisions holding the absence of a monetary demand from a claim not to be “jurisdictional” (and thus amenable to amendment) stress this portion *658 of the decision and note that the specific reason for the Court’s affirmance of the dismissal of the Lepkowski claims was their failure to meet this notice-based standard.
The requirement that a claim in the Court of Claims include the “total sum claimed” was added to the statute in 1936 as part of a package of amendments to the Court of Claims Act (L 1936, ch 775, § 15-a). A letter to the Governor accompanying the legislation indicates that its principal purpose was to “reduce the number of claim bills annually presented to the Governor” by (1) bringing all of the time limitations for instituting a claim into one statutory location as opposed to the scattered situation that existed, (2) extending the time to file certain tort claims from 60 to 90 days, and (3) providing for “late claim” filing at the court’s discretion (Letter from Secretary to Assembly Minority Leader to Governor’s Counsel, Bill Jacket, L 1936, ch 775, at 7-8). The letter also notes there were “several unimportant changes made in other sections of the bill” (at 8). The addition of the total sum claimed requirement is not mentioned in the Bill Jacket.
Since this legislative addition in 1936, as noted in Peart v State of New York (supra), no appellate court ever has held the absence of a total sum claimed to be jurisdictional. Indeed, until the Court of Claims, post -Lepkowski, began to receive jurisdictional motions directed at claims lacking a total sum claimed, no court ever had dismissed a claim for this reason. The Court of Claims had treated absence of a monetary demand as a type of pleading omission that readily could be remedied by amendment. For example, in Concourse Nursing Home v State of New York (Ct Cl, Mar. 21, 2000, Collins, J., UID No. 2000-015-011), the court stated it is
“well settled that absent a demonstration of prejudice a motion to amend a claim to set forth the amount of damages sought will be granted [citing Barski v State of New York, supra]. The Barski holding will be followed here as the State has failed to allege or establish prejudice and the proposed amended claim will be considered the operative *659 pleading for the purpose of determining the defendant’s motion to dismiss the claim for lack of subject matter jurisdiction.”
And in Partridge v State of New York (Ct Cl, May 31, 2000, Patti, J., UID No. 2000-013-002), the court stated: “A pleading may comply with the Court of Claims Act requirements for stating a claim, even though it does not indicate the dollar amount that the claim seeks in damages.”
Much of the case law concerning the statutory requirement that a claim contain the total sum claimed arose in the context of motions requesting that a notice of intention be deemed a claim. Unlike a claim, the statute expressly provides that a notice of intention need not contain the items of damages and the total sum claimed (Court of Claims Act § 11 [b]). Judicial treatment of such motions involving notices of intention lacking a monetary ad damnum consistently held that its absence did not prevent a notice of intention from being deemed a claim.
What Lepkowski characterized as the guiding principle informing section 11 (b) actually had been the standard for evaluation of claims and notices of intention since it was articulated in Chalmers & Son v State of New York (271 App Div 699 [1947], affd 297 NY 690 [1947]).[10] Chalmers was the first decision to recognize the remedy of deeming a document labeled a “notice of intention” — albeit with a total sum — to be a claim:
“The purpose of the provision requiring the presentation of a notice of intention to file a claim or the claim itself against the State as a condition precedent to the institution of a suit for damages was not to hamper and harass the claimant but to give the officers of the State prompt notice of the damages or injuries and the surrounding circumstances in order that the matter might be investigated and the State’s liability determined.
“The statute should receive a reasonable construction and not one that unjustly deprives a suitor of the right to recover adequate compensation for the damages he has sustained. A substantial compliance with the statute is all that is required . . .
“If the claim is technically imperfect or inaccurate in some respects but is yet sufficiently definite to inform the officers of the State of the time and cause of *660 claimant’s injuries or damages, and the amount sought, it should be upheld” (id. at 701-702).
Thereafter, the Court of Claims and appellate courts applied the Chalmers remedy to notices of intention that did not state a total sum claimed, permitting them to be treated as claims. In McCabe v State of New York (58 Misc 2d 823 [1969, Lengyel, J.]), for example, the Court of Claims was faced with a motion pursuant to then section 10 (5) of the Court of Claims Act — the predecessor of current section 10 (6) — that had to be denied due to the absence of a reasonable excuse for failing to timely file the claim, a prerequisite for late claim relief under the statute. The court, sua sponte, deemed the timely notice of intention to be a claim pursuant to Chalmers. Unlike the notice of intention in Chalmers, McCabe’s did not contain the total sum claimed. The court stated:
“[W]e do not believe such is a fatal defect to a finding that this notice of intention was actually a notice of claim. In our years on this court, and in the practice of law prior to those years, we noticed that in many instances any relationship between the amount sued for and practicality could be somewhat illusory. In any event, the total sum claimed can have absolutely no bearing upon the fact of the State’s knowledge and investigation or the quality of that investigation. The State was not deceived or misled and its rights have not been prejudiced. It would be abhorrent to our sense of justice to dismiss these claims and not grant these claimants their full day in court” (id. at 826).
Barski v State of New York (43 AD2d 767 [3d Dept 1973]) was the first appellate decision to apply the Chalmers notice of intention remedy to a notice that did not contain a demand for relief, stating: “We agree that the failure to set forth the total sum claimed in this case is not a fatal defect to a finding that the notice of intention was actually a notice of claim. Here, the State was not deceived or misled and its rights have not been prejudiced” (id. at 768). Similarly, two other appellate decisions followed in 1976 and 1986 (Otis El. Co. v State of New York, 52 AD2d 380 [3d Dept 1976]; Liberty Mut. Ins. Co. v State of New York, 121 AD2d 694 [2d Dept 1986]).
The absence of the ad damnum from a tort claim received comment from the Court of Claims in Wilson v State of New York (117 Misc 2d 608 [1983, Lengyel, J.]), where the court addressed a claim for an intentional tort that had been rendered *661 untimely by the Third Department’s decision in Trayer v State of New York (90 AD2d 263 [1982]) holding that a claim for an intentional tort interposed more than one year after accrual was untimely (based on the CPLR 215 one-year statute of limitations).[11] Wilson held the defendant had waived any statute of limitations defense by not pleading it in its answer, and went on to state:
“I also point out that, except for the inclusion of an ad damnum clause, claimant filed and served a notice of intention to file a claim which contained all of the information necessary for a valid claim. As stated in Barski v State of New York (43 AD2d 767, 768): £ “the sum claimed has no bearing upon the State’s knowledge and investigation (McCabe v State of New York, 58 Misc 2d 823). In fact, the amount alleged as damages in a tort claim often bears little relationship to the actual damages incurred.” ’ (See, also, Chalmers & Son v State of New York, 271 App Div 699, 701 [1947], affd 297 NY 690.) Therefore, even if the defendant had pleaded the CPLR 215 Statute of Limitations, I would hold this to be a valid claim and any dismissal motion predicated upon the Statute of Limitations would be denied” (id. at 611-612).
An effort by the State to overturn the entire Chalmerssanctioned procedure was judicially rebuffed in Carnesi v State of New York (140 AD2d 912 [1988]), where the Third Department addressed the State’s contention that the Chalmers remedy of deeming a notice of intention to be a claim was outmoded and that Chalmers should be reversed. The Court held that since the Court of Appeals had affirmed Chalmers, that Court should pass on its continuing validity and, in any event, the Court did not see any conflict between the Chalmers procedure and more recent Court of Appeals decisions requiring strict compliance with notice of claim statutes:
“Far from sanctioning tardy compliance with notice requirements, Chalmers merely stands for the proposition that it is within the Court of Claims’ discretion to determine whether the notice of intention *662 was substantially the same as a claim and, thus, the suit brought to adjudicate the State’s liability was not barred by the Statute of Limitations. As a consequence, those cases holding that the time and service requirements of notice statutes must be strictly complied with . . . are inapplicable to a Chalmers case factual pattern, which is more aptly described as a liberal construction of pleadings decision.” (Id. at 913.)
In 1993, the Legislature saw fit to codify the Chalmers remedy in Court of Claims Act § 10 (8),[12] providing that a claimant who timely served and filed a notice of intention but failed to timely interpose a claim pursuant to the provisions of section 10 could ask the court for permission to treat the notice of intention as a claim (see L 1993, ch 405). This legislation obviously was enacted with knowledge that a notice of intention is required to set forth the same information as a claim, except for the items of damage and the total sum claimed, and also with awareness of the afore-cited judicial determinations that the failure of a notice of intention to state the total sum did not bar application of the remedy in those cases. The Legislature did not change the statutorily required contents of a notice of intention or provide that in order to be eligible for section 10 (8) relief, a notice of intention had to contain the items of damage and total sum claimed.
Then in 1995 the Legislature again dealt with the notice of intention. In amending Court of Claims Act § 11 to require only service of the notice, rather than service and filing (see L 1995, ch 466), it affirmed the continuing role of that document in providing notice to enable the State to conduct a prompt investigation — even though the notice need not include the items of damage or the total sum claimed. In Muller v State of New York (184 Misc 2d 500 [2000, O’Rourke, J.]), the Court of Claims addressed the effect of the 1995 amendment to section 11 on the section 10 (8) procedure since the latter, by its terms, required both service and filing of the notice of intention as a predicate for relief. Eschewing a strict construction of the provision, the court held “the conflict may be avoided simply by allowing the remedy of section 10 (8) (a) to apply where a notice of intention was timely served on the Attorney General [without *663 having been filed] and where all of the remaining statutory-prerequisites for relief thereunder have been met” (id. at 503).[13] Turning to the absence of the total sum claimed, the court observed:
“the failure of the notice of intention to specify the amount of damages sought is not fatal to this application where the notice was otherwise sufficient to apprise the State of the substance of the claim (see, Barski v State of New York, 43 AD2d 767, 768; McCabe v State of New York, 58 Misc 2d 823, 826; see also, Brown v State of New York, 250 AD2d 314, 319). Clearly, that defect can be remedied by the filing of an amended claim containing a demand for relief. Manifestly, the absence of any appreciable prejudice to defendant if this application were to be granted is apparent, given that defendant promptly served an answer to the claim and that a thorough investigation of this accident was conducted by State actors. Thus, the court finds that claimant has met all of the statutory prerequisites for granting the requested relief pursuant to section 10 (8) (a), except that he has not filed a notice of intention with the Court of Claims” (id. at 502).
The filing requirement, read out of the statute by the Muller court’s liberal construction, was removed by the Legislature in 2001 (L 2001, ch 205).
The most recent pre-Lepkowski Court of Claims decisions allowing a notice of intention without an ad damnum to be a claim were Smith v State of New York (Ct Cl, Dec. 10, 2002, Fitzpatrick, J., UID No. 2002-018-196), granting an application pursuant to section 10 (8) notwithstanding that the notice of intention did not state the amount of damages sought and noting that this omission did not require denial of the application since “that defect can be remedied by the filing of an amended claim”; and Dowdell v State of New York (Ct Cl, Oct. 27, 2003, Collins, J., UID No. 2003-015-364), holding the notice of inten *664 tion was sufficient to comply with section 11 (b) in that it “merely lacked an [ad damnum] clause which may be addressed in an amended claim.”
*663 “In cases of inconsistency or doubt, this court believes that such questions must be resolved in favor of the claimant and in favor of justice requiring the matter to be heard by a court. New York State has a continuing course, from the Field Code to the CPLR, of liberal interpretation of our statutes to allow the courts to be available to even those confused by their intricacies” (id.).
*664 Less than two months after Dowdell, the Court of Appeals decided Lepkowski. As recounted in the foregoing survey of decisions, prior to Lepkowski, every reported decision — trial level and appellate — addressing the question of whether a notice of intention’s failure to contain the total sum claimed affected its ability to be treated as a claim was answered in the negative. This judicial analysis of the Court of Claims Act was confirmed twice by the Legislature, in 1993 and again in 2001. Although not addressed at the appellate level, every Court of Claims decision addressing whether a claim that failed to contain the total sum claimed could be amended to include it held that the sole consideration was whether the amendment would prejudice the State. All these judicial determinations and legislative actions were based on the conclusion that the total sum claimed, by itself, was irrelevant to the guiding principle behind the section 11 requirements, to wit, that their purpose is to ensure the State receives prompt notice of the pertinent allegations so as to afford the opportunity for a prompt investigation.
This court holds that failure here to state the total sum claimed is not a fatal jurisdictional defect requiring dismissal of the claim and that Lepkowski has not changed long-settled law in that regard. There is no reason to discern that the Court of Appeals, in holding “these claims are jurisdiction-ally defective for nonconformity with section 11 (b)’s substantive pleading requirements” (Lepkowski, 1 NY3d at 209), intended to radically change the law by requiring, henceforth, a court to determine whether every claim contains each and every item of content in section 11 (b) — specified therein seriatim, without numbers — as if it were a numerical checklist to trigger the State’s waiver of sovereign immunity and thus confer jurisdiction over a claim. There is no imperative to conclude that when the Court in Lepkowski enumerated what “these claims” before it were required to contain in order to comply with section 11 (b) it intended to proclaim a new, inflexible jurisdictional standard applicable to all claims. Rather, Lepkowski simply held that with four of five statutorily delineated items of information missing from the claims before it — including the sum each of the claimants was allegedly owed by the State — the State was not afforded the opportunity to *665 investigate and, therefore, those claims could not pass jurisdictional muster.[14]
Determining whether a particular claimant has provided sufficient information to enable the State to investigate promptly and ascertain its potential liability (i.e., applying the guiding principle) necessarily is a sui generis inquiry. All of the decisions cited herein recognize this principle, and are directed at whether the specific document that was before the court in each case (be it a claim or a notice of intention) contained sufficient information to enable an investigation of the facts and circumstances of that case. It is one thing to say the 619 Lepkowski claimants were required to state not only where, when and how many hours they worked, but also the amount of the alleged underpayments. It is quite a leap from this seemingly evident proposition to the conclusion that an alleged victim of medical malpractice, such as the claimant here, must provide to the State in every instance a number — whether known or unknown, estimated or inflated *666 or, as some courts have noted, perhaps entirely artificial— under penalty of a jurisdictional dismissal.[15]
If this latter conclusion really is what was intended by Lepkowski, then it cannot be viewed as anything other than overturning, sub silentio, decades of consistent appellate and Court of Claims treatment of claims that lack a monetary demand in the face of explicit legislative enactments codifying those interpretations. To the contrary, Lepkowski must be interpreted within that context, i.e., such claims are acceptable so long as the State has sufficient information to permit an investigation of the claim.
Any consideration of this question ultimately must focus on the legislative intent implicit in the section 10 provisions that a claimant may meet the applicable jurisdictional time period therein by serving a notice of intention as an alternative to serving and filing a claim within such periods. The Lepkowski court’s restatement of section 11 (b)’s guiding principle, “to enable the State ... to investigate the claim[s] promptly” (at 207 [emphasis added]) has reference to these section 10 time frames. The essential difference between litigation by a claimant against the State of New York as opposed to a plaintiff against a nongovernmental defendant is that a claimant against the State must serve a document containing sufficient information to enable an investigation within an extremely truncated period of time. A claimant may opt to do so via a claim — which serves the dual role of providing the State with the opportunity to investigate and also commencing the action — or via a notice of intention, which fulfills only the notice function but does not commence the action. Both documents are required to set forth the time when and place where the claim accrued and the nature of the claim. But, if the claimant chooses to defer commencement of the action by serving a notice of intention as “notice” to the State, he or she may do so, in personal injury claims for example, for a period of up to two years from accrual (Court of Claims Act § 10 [3]), to a time when a “prompt” investigation is hardly apposite. And only then, when the claim is ultimately *667 served and filed, does the statute require, for the first time, that the State be advised of the items of damage and total sum claimed. From this, it is apparent that the intention of the drafters of the Court of Claims Act, over the years, is in agreement with consistent judicial determinations holding that the statement of the total sum claimed, by itself, does not necessarily have anything to do with providing the State with sufficient information to promptly investigate the claim.
Therefore, this court cannot conclude the Legislature intended that the statement in a claim of the total sum must be treated invariably as a “jurisdictional” requirement, whose absence is not amenable to cure via an amended pleading, when the Legislature also provided that (i) a different document, the notice of intention, need not have a total sum claimed but, nevertheless, suffices to meet the Court of Claims Act’s jurisdictional requirements if it provides the time when and place where the claim accrued and the nature of the claim, and (ii) such a document may be deemed a claim thereafter. Indeed, in this case, where claimant began by serving and filing a notice of intention — permissibly omitting the items of damage and total sum claimed — had she chosen to move to have that notice treated as a claim pursuant to section 10 (8) instead of filing the claim, then under section 10 (8) the only issue before this court would have been whether there was prejudice to the State.[16]
Defendant’s position is that because this claim lacks a total sum claimed it must be dismissed for lack of jurisdiction. Based on the foregoing, this court is of the opinion that such a result was neither intended, nor is it required, by Lepkowski.
The only remaining consideration on claimant’s motion for permission to submit an amended claim is whether this would prejudice the defendant (see e.g. Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983]; Harding v Filancia, 144 AD2d 538 [1988]). Defendant does not allege prejudice arising from claimant’s proposed amended claim, and the court perceives none.
Accordingly, the defendant’s motion is denied and the claimant’s cross motion is granted.

. Notwithstanding assertion of these jurisdictional defenses in its answer, defendant proceeded to embark upon disclosure, serving demands with which claimant complied (including an 11-page verified bill of particulars) and responding to claimant’s demands. One week after the decision was handed down in Kolnacki v State of New York (10 Misc 3d 781 [2005], infra), which supported defendant’s contention that the court lacks jurisdiction over a claim without the “total sum claimed,” defendant served a demand for claimant to provide 33 authorizations for medical and other records. At a disclosure confer *652 ence held on June 29, 2005, claimant and defendant agreed that the remaining disclosure here would track a related Supreme Court action and that a telephonic disclosure status conference would be held in August. On July 11, 2005, defense counsel wrote to claimant’s counsel requesting that a date for claimant’s deposition be scheduled after October 1, 2005 and offering to make state witnesses available for deposition by claimant. The next day (six weeks after the expiration of the underlying statute of limitations [CPLR 214-a]), defendant served this motion to dismiss for lack of jurisdiction. Defendant takes pains to point out that the alleged jurisdictional defects were raised in its answer (presumably to show that claimant was given adequate notice), and that the defects cannot now be cured because the statute of limitations has run.
Defendant’s litigation posture here is viewed with disfavor. If, at the outset, defendant genuinely believed the court lacks jurisdiction over the claim (as opposed to merely having interposed a pro forma defense), then it behooved defendant to press ahead with the issue as soon as possible after raising it, rather than proceeding solely with a disclosure track and thereby creating the impression the jurisdictional defenses would not be seriously pursued. At the very least, when the Kolnacki decision was issued supporting defendant’s position, defendant then should have moved to dismiss the claim forthwith. Instead, defendant continued to create an impression that it would seek a determination on the merits of the claim and waited until the statute of limitations ran out before making its motion. This can only be viewed as a tactic to prevent claimant from curing any jurisdictional defect this court might find to exist and thus prevent claimant from obtaining a determination on the merits of her claim.

. Although the affirmative defense alleging lack of “particularization” relates only to the portion of the claim asserting a negligent hiring cause of action, the motion to dismiss for lack of jurisdiction is directed at the entire claim, including the allegations of negligence and malpractice.

. Decisions of the Court of Claims not officially reported may be found at the court’s Web site: <http://www.nyscourtofclaims.state.ny.us>.

. That document sets forth the times when and place where the claim accrued and contains specific allegations of negligence and malpractice in connection with claimant’s surgery and treatment at defendant’s hospital, including failure to properly perform the hysterectomy and bilateral pelvic lymphadenectomy; failure to properly administer drugs and failure to perform necessary diagnostic tests and procedures causing her, among other things, to sustain permanent injuries to her ureters. It unquestionably provided sufficient information to enable a prompt and thorough investigation.

. The defendant’s motion to dismiss in Kolnacki was made first at the commencement of trial on January 5, 2004, three weeks after the Lepkowski decision was handed down on December 18, 2003. It appears defendant did not raise lack of an ad damnum prior to that date, presumably because defendant had no inkling the claim’s lack of a “total sum claimed” might be of jurisdictional significance since no decision, prior to December 18, 2003, had reached such a conclusion.

. (Accord Cepeda v State of New York, Ct Cl, May 9, 2005, Midey, J., UID No. 2005-009-028; Shabazz v Goord, Ct Cl, Sept. 13, 2004, Midey, J., UID No. 2004-009-53.) Other decisions have stated the lack of an ad damnum has jurisdictional import, but in the context of claims that did not comply with the statute for other reasons as well (see Mujica v State of New York, 24 AD3d 898 [2005]; McCabe v State of New York, Ct Cl, June 24, 2004, Collins, J., UID No. 2004-015-413).

. Accord Stewart v State of New York (Ct Cl, Sept. 24, 2004, Patti, J., UID No. 2004-013-047) striking the affirmative defense that the medical malpractice claim at issue, which did not contain the total sum claimed, failed to conform to section 11 and 22 NYCRR 206.6 (b).

. “We conclude that the claims do not comply because they fail to allege the times when and the place where the claims arose, any items of damage or the total sum claimed” (Lepkowski, supra, 1 NY3d at 203).

. In Heisler, the Court stated:
*658 “What is required is not absolute exactness, but simply a statement made with sufficient definiteness to enable the State to be able to investigate the claim promptly and to ascertain its liability under the circumstances. The statement must be specific enough so as not to mislead, deceive or prejudice the rights of the State. In short, substantial compliance with section 11 is what is required” (at 767).

. Peart v State of New York, supra n 5.

. The Court in Trayer held that the timeliness of an intentional tort claim must be determined solely with reference to the CPLR notwithstanding that the Court of Claims Act, at the time, provided that any tort claim could be brought up to two years after accrual if a notice of intention had been served within 90 days.

. In addition to codifying the remedy, the statute provides that relief thereunder must be requested prior to expiration of the underlying statute of limitations.

. The court first noted the conflict between section 11, which no longer required the act of filing the notice of intention, and section 10 (8), which expressly required this act as a condition for relief, and stated:

. The Court felt compelled to observe, as did the Appellate Division whose decision it affirmed (Lepkowski v State of New York, 302 AD2d 765, 766-767 [3d Dept 2003]), that the record reflected the State was in the dark with the Lepkowski claim because the State did not have detailed time records for the periods in question showing the actual number of hours worked (which presumably would have assisted a prompt investigation) (Lepkowski, supra, 1 NY3d at 208).
Both courts cited Cobin v State of New York (234 AD2d 498 [2d Dept 1996], lv dismissed 90 NY2d 925 [1997], rearg denied 91 NY2d 849 [1997]) for the proposition that the State need not look beyond the claim itself to ascertain the information section 11 (b) requires to be alleged. In this regard, however, it has been held that when the State argues a claim is jurisdictionally defective for failure to comply with section 11 (b), it must show that it made “some effort to investigate based on the information in the pleadings” (Kerr v State of New York, Ct Cl, Sept. 26, 2002, Read, P.J., Claim No. 105574, Motion No. M-65237). The issue in Kerr was whether the description of the place where the claim accrued was sufficient to comply with the statute. The court observed, after citing Cobin:
“Notably, defendant does not here contend that any attempted investigation was thwarted by an inability to identify the accident site, which defendant surely could have located with the photographs [that were attached to the claim] in hand. Had defendant chosen to speak to someone familiar with the construction site, investigative time could have been further reduced (see Cannon v State of New York, 163 Misc 2d 623)” (id.; see also Peart, supra, n 1, citing Lufker v State of New York, 239 AD2d 565 [2d Dept 1997]).

. Indeed, such an interpretation also is antithetical to a court’s power to permit amendments of pleadings after trial to conform them to the evidence upon such terms as are just (CPLR 3025 [c]) — a rule which undoubtedly contemplates, among other things, that the amount of damages is not necessarily set in stone at or before the commencement of a lawsuit, especially in personal injury claims, but may evolve as circumstances unfold. To the same effect, see also Court of Claims Act § 9 (8) permitting the court to amend a claim “in furtherance of justice for any error in form or substance.”

. Claimant has not requested such relief and, by the time defendant made its dismissal motion, the time in which she could have done so had expired.