OPINION OF THE COURT
S. Michael Nadel, J.
*456 The defendant has moved to dismiss the claim on the ground that the court does not have subject matter jurisdiction because the claim fails to allege the total sum claimed, as required by Court of Claims Act § 11 (b).
The issues presented on this motion have recently been decided by this court, in Peart v State of New York (10 Misc 3d 1070[A], 2005 NY Slip Op 52215[U] [2005]), in which the court rejected the defendant’s contention that Lepkowski v State of New York (1 NY3d 201 [2003]) held that the failure of a claim to allege the amount of damages sought deprives the court of subject matter jurisdiction over the claim, and denied the defendant’s motion to dismiss the claim.[1] Nothing in the record before the court compels a contrary result in the instant matter.[2] The claim provides the defendant with what the statute requires: “adequate information to investigate the claim” (Morris v State of New York, 27 AD3d 282, 283 [1st Dept 2006]), the most recent reiteration of the guiding principle informing section 11 (b).
Indeed, an examination of this claim, for medical malpractice, compels the conclusion that even when measured by the defendant’s interpretation of Lepkowski, upon which the defendant again relies, the claim should not be dismissed. Specifically, as relevant here, the claim (eighth paragraph) alleges:
*457 “The particulars of claimant’s damages are as follows:
“Medical services............................to be supplied
“Nursing services............................not applicable
“Hospital services...........................to be supplied
“Medicine.......................................$250
“Personal suffering, etc..................$1,000,000.00
“Total..............................................to be supplied”
As applied to this claim, the defendant’s position appears to be that the failure to compute the sum of two distinctly stated numbers ($250 and $1,000,000), and to recite the sum (which the court has calculated would be $1,000,250), deprives the court of jurisdiction. To the extent that such an absence of computation might be regarded in some metaphysical realm as not stating the amount of damages sought, the suggestion that it is of any jurisdictional significance is simply not required by even the most expansive interpretation of the Lepkowski decision. This claim states the total sum claimed. The total sum claimed is $1,000,250.
To the extent that the defendant’s motion seeks to vacate the court’s ruling at a conference on the record that, based upon the foregoing examination of the claim, the claimant may amend the eighth paragraph of the claim, if deemed necessary, the motion is denied.
The instant motion to dismiss the claim, however, raises an aspect of the issue not present in Peart, where the claim was filed almost 18 months after the Lepkowski decision, which was decided on December 18, 2003. In this case, the claim was filed nine months before the Lepkowski decision. In seeking to have this claim dismissed, therefore, the defendant would have its interpretation of Lepkowski applied retrospectively.
The defendant’s interpretation of Lepkowski was not the law before Lepkowski was decided (see Hamilton v State of New York, 11 Misc 3d 650, 655 n 5 [Ct Cl 2005]; Legall v State of New York, 10 Misc 3d 800, 806 [Ct Cl 2005] [in which the court stated: “Defendant . . . suggests that the result of (Lepkowski) is to abrogate the long-standing principle that the failure of a claim to demand a specific amount of damages is not a jurisdictional defect but rather a pleading deficiency that can be remedied by amendment of the claim”]). As such, the defen *458 dant’s interpretation, if accepted, would be a change in decisional law.
In Gurnee v Aetna Life & Cas. Co. (55 NY2d 184, 191-192 [1982]), the Court of Appeals stated:
“[I]t is well established that, ‘consonant with the common law’s policy-laden assumptions, a change in decisional law usually will be applied retrospectively to all cases still in the normal litigating process’. As an exception to this general rule, however, ‘where there has been such a sharp break in the continuity of law that its impact will “wreak more havoc in society than society’s interest in stability will tolerate” ’ a court may direct that the new pronouncement operate prospectively alone.” (Citations omitted.)
The Gurnee court continued:
“In Chevron Oil Co. v Huson (404 US 97, 106-107), the Supreme Court outlined three factors to consider in determining if a ruling should be prospective only. ‘First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed’ (404 US, at p 106). Second, the prior history of the rule at issue and the impact of retroactive application upon its purpose and effect should be considered. Finally, the court should take into account any inequity that would be created by retroactive application” (id. at 192).
That the defendant’s interpretation of Lepkowski is a “sharp break” from accepted practice in the Court of Claims since enactment of the first Court of Claims Act in 1920, is not only acknowledged by the defendant, but was discussed, at length, in Peart (supra).
That the defendant’s interpretation of Lepkowski was not foreshadowed is most evident in decisions of judges of the Court of Claims, not only of those who have rejected it (see Legall, Peart, Hamilton, supra), but also from decisions of those who have accepted the defendant’s position, but who prior to Lepkowski had held that a claim could be amended to add the total sum claimed. For example, in Concourse Nursing Home v State of New York (Ct .Cl, Mar. 21, 2000, Claim No. 101181, UID No. 2000-015-011) the court stated that it is “well settled that *459 absent a demonstration of prejudice a motion to amend a claim to set forth the amount of damages sought will be granted.” Then, after the Court of Appeals decision in Lepkowski, the same court (in McCabe v State of New York, Ct Cl, June 24, 2004, Claim No. 108925, UID No. 2004-015-413), relying upon Lepkowski, said: “[T]he claim fails to set forth ‘the total sum claimed’ as required by Court of Claims Act § 11 (b). This information is required by the mandatory language of the statute and its absence renders the claim jurisdictionally defective requiring dismissal.”
The second prong of the Chevron Oil test for prospective application of a change in decisional law — the impact of retroactive application of the rule at issue upon its purpose — is difficult, if not impossible, to assess since the defendant’s interpretation of Lepkowski is not explicitly stated in the Court of Appeals decision, so that there is nothing in that decision which acknowledges any change in decisional law, much less its purpose.
Yet the very absence of a specific articulation of the “rule at issue” from the Court of Appeals decision suggests yet another compelling basis for prospective application from a date even later than the date of that decision. Until recently, just over two years after Lepkowski was decided, there had been no publication of any decision of the Court of Claims accepting the defendant’s interpretation of Lepkowski, and in which a claim was dismissed solely for the failure to include the amount of damages (Kolnacki v State of New York, 10 Misc 3d 781 [Ct Cl 2005] [first published on Jan. 4, 2006]). The only previously published decision addressing the issue rejected the defendant’s interpretation, denied the motion to dismiss and granted the claimant’s motion to amend the claim to add the total sum claimed (Legall, supra [first published on Nov. 30, 2005]). To the extent that this circumstance might suggest it is inequitable to apply the defendant’s interpretation of Lepkowski to any claim which was filed before the defendant’s interpretation of Lepkowski was actually accepted by a court in a published decision, such is left for consideration when the issue presents itself with respect to a claim which was filed after Lepkowski, but before such date of publication.
The inequity of retrospective application of the defendant’s interpretation of Lepkowski is apparent from its application to the instant claim, where the issue was not raised by the defendant until after the expiration of the statute of limitations. *460 Were the court to accept the defendant’s interpretation of Lepkowski, and dismiss the claim on jurisdictional grounds, the claimant would be precluded from attempting to cure the pleading defect since it is too late for the claimant to seek permission to file a late claim, with respect to which the only absolute limitation on the court’s authority is that the application must be made before the applicable statute of limitations has expired (Court of Claims Act § 10 [6]).
It is worthy of note that the defendant’s practice of waiting until after the statute of limitations has expired before raising a jurisdictional objection was the subject of comment by a judge of this court 30 years ago in Berlin & Jones v State of New York (85 Misc 2d 970, 979 [1976]): “Many of our Judges have noted the predilection of the State Attorneys-General to raise” questions of jurisdiction
“when it is too late for the situation to be rectified. Whether this is done at the discretion of the individual Assistant Attorney-General or in compliance with office policy is not known. I realize these are adversary proceedings but to hold this time bomb in close reserve during extensive and expensive trial preparation and lengthy and expensive trials is, in my opinion, an unfortunate practice.”
Subsequent to the decision in Berlin & Jones, the Attorney General who was elected less than three years later specifically stated that it was the policy of his office to respond to jurisdictionally defective claims at a time which permitted claimants to take corrective action “before the applicable CPLR statute of limitations expires” (Mem for Governor from Attorney General Robert Abrams, Bill Jacket, L 1990, ch 625, at 11 [commenting upon legislation which added subdivision (c) to Court of Claims Act § 11, providing that any objection based upon what was until then the only recognized jurisdictional defenses in the Court of Claims was waived, unless raised by the defendant in the answer, or by motion made within the time to answer]). There is no reason to believe that the Court of Appeals in Lepkowski, however its decision may be interpreted, required a course of action by the defendant which can only be understood to be a repudiation of that sound public policy.
Another inequitable aspect of retrospective application of the defendant’s interpretation of Lepkowski is that while the jurisdictional character of the purported rule would of necessity require that, on the day Lepkowski was decided, the Court of *461 Claims was divested of jurisdiction in every claim pending on that date in which the amount of damages sought was not stated, it appears to be the case, more than two years after that decision, that some of those claims have been settled by the defendant without reference to any jurisdictional impediment, while others, including the instant claim, have been subject to motions to dismiss; still others are being actively litigated without the issue having been raised; some of those may even be sub judice, awaiting decisions after trial, although the defendant has elected, thus far, not to raise what is asserted here, and elsewhere, to be of jurisdictional dimension.
A particularly troublesome instance of this selective application of what is here contended to be a fundamental requirement of the court’s subject matter jurisdiction has recently occurred during the time that the instant motion has been sub judice. The defendant, in another claim for medical malpractice, after asserting in the answer that the failure of the claim to include the amount of damages sought deprives the court of jurisdiction, has subsequently sought to enter into a voluntary stipulation agreeing to amendment of the claim to include the amount, and to not raise the defense in the answer to the amended claim. The foregoing is clearly at odds with the defendant’s assertions, in support of this motion, that the failure to allege the amount of damages sought is a jurisdictional defect which “cannot be cured by an amendment of the claim” and that it is “axiomatic that the jurisdictional requirements under Court of Claims Act § 11 (b) cannot be waived” (affirmation of Assistant Attorney General ÍÍ 26).
While it is not for this court to question the consistency of the State’s decisions to raise or not raise what may appear to be available defenses to particular claims (since the circumstances of particular claims, as a matter of litigation strategy, if nothing else, may warrant what might otherwise appear to be a lack of consistency), it is another matter entirely for the State to treat the identical pleading requirement as a condition of the State’s waiver of sovereign immunity in one claim, and then to affirmatively elect to ignore it in another.
Whether this selective application results from willfulness or caprice, it is manifestly inequitable for the subject matter jurisdiction of the Court of Claims to be defined differently from one claim to another. The subject matter jurisdiction of the Court of Claims is defined by the State’s waiver of sovereign immunity, which no court has ever held to be conditioned upon the litiga *462 tion strategy of the Attorney General. Moreover, in the absence of explanation, selective application of what is asserted to be a fatal jurisdictional impediment to the trial of the instant claim on its merits is not only inequitable, it has the potential for abuse.
Finally, based upon past history since enactment of the Court of Claims Act, it is not at all unlikely that some of those claimants whose claims would be extinguished by retrospective application of the defendant’s interpretation of Lepkowski will seek legislative redress in the form of private claim bills, a process which itself has been regarded in the past as fundamentally inequitable (see Brown v State of New York, 89 NY2d 172, 179 [1996] [in which the Court of Appeals specifically noted the “inequity and inefficiency” of the historic practice “for handling claims against the State” whereby “private bills (were) addressed to the Legislature’s sense of justice”]).
The practice culminated in 1975, when Governor Hugh L. Carey vetoed 18 private claim bills which had passed the Legislature. In his veto memorandum (#36 through #53, dated Aug. 5, 1975) he said:
“These private bills are fundamentally inconsistent with the notion of equal treatment under the law which lies at the heart of our entire system of government. There is no reason why special access to the Court of Claims should be afforded to a selected few people who have the resources available to have special bills drawn up for them and passed through the Legislature. If there is a defect in the general laws of this State that precludes many meritorious . . . claims from being heard in the Court of Claims, the general laws should be amended to provide greater and uniform access to the Court for all the people of this State rather than remedying the defect for the benefit of a favored few.” (Public Papers of Governor Carey, Mem on Legis Bills Vetoed, Aug. 5, 1975, at 280-281.)
Within a year, subdivision (6) of section 10 of the Court of Claims Act was enacted (L 1976, ch 280), conferring discretion upon the Court of Claims to permit late filing of claims upon *463 consideration of specifically enumerated factors, thus rendering private claim bills unnecessary.[3]
Since then, the only private claim bill enacted by the Legislature arose out of claim No. 78191, in which, after a trial had taken place but before a decision was issued, it was determined that the claim had been untimely, thus depriving the court of subject matter jurisdiction and requiring dismissal of the claim. That dismissal was affirmed in Chapman v State of New York (261 AD2d 814 [1999]). A private claim bill (L 2000, ch 584) enabled the Court of Claims to again try that claim, resulting in a judgment for the claimant (Chapman v State of New York, Ct Cl, Aug. 1, 2005, Claim No. 103903, UID No. 2005-028-008).
If those circumstances warranted a special act of the Legislature in order to have the claim heard and determined, such might also be expected, for example, with respect to claim No. 103121, which was tried during the month after the Court of Appeals decided Lepkowski. At the trial, five witnesses testified and 25 exhibits were received in evidence, resulting in a lengthy written decision in July 2004 finding the State liable (Kolnacki v State of New York, Ct Cl, July 12, 2004, Claim No. 103121, UID No. 2004-034-002). The claim was subsequently dismissed in March 2005, based upon the defendant’s interpretation of the Lepkowski decision, solely because the claim did not include the total sum claimed (Kolnacki v State of New York, 10 Misc 3d 781 [2005]). The potential for inequity as to that claim could result not just from retrospective application of the defendant’s interpretation of Lepkowski, but from the fact that, however meritorious the case, competent evidence sufficient to warrant success in court will not necessarily result in legislative action.
Thus, upon consideration of the pertinent factors in accordance with controlling authority (Gurnee v Aetna Life & Cas. Co., supra), even if the defendant’s interpretation of Lepkowski is ultimately determined to be correct (see n 1, supra), it should not be applied to this claim, or to any other claim which was *464 otherwise properly subject to the court’s jurisdiction before the Court of Appeals decision.
None of the foregoing is intended, nor should it be understood, in any way to excuse or condone failure to comply with longstanding explicit statutory requirements as to the information which must be in a claim. Rather, the point is simply that if the content of a pleading in civil litigation is suddenly, unexpectedly, to become vested with jurisdictional character, after 70 years of consistent jurisprudential treatment to the contrary (see Peart, supra), it should not occur in a manner which, as to some claimants, can fairly be described as rendering the State’s waiver of sovereign immunity as nothing more than a “beguiling fiction” (Joseph Kahn, When Chinese Sue the State, Cases Are Often Smothered, New York Times, Dec. 28, 2005, at Al, col 1). In the same vein, albeit in a different context, the Court of Appeals has said: “It is not the role of the court, . . . without benefit of legislative authority, to cut off abruptly a cause of action good until then under conventional law” (Bay Ridge Air Rights v State of New York, 44 NY2d 49, 55 [1978]).
The court is not unmindful that one could infer from the foregoing that the Court of Appeals ought not to have dismissed the claims in Lepkowski, which were filed several years before that decision. But, as more fully explained in Peart (supra), in Lepkowski the Court did not dismiss the claims because they did not include the amount of damages sought; those claims were dismissed because the Court of Appeals determined that based upon the record before it the content of the claims as written was insufficiently definite to enable the State to investigate (see Morris v State of New York, supra). That longstanding principle of Court of Claims jurisprudence was not first enunciated in Lepkowski. It has been the law throughout the history of the Court of Claims Act; it was the law when the claims in Lepkowski were commenced; it remains the law today.
To reiterate this court’s conclusion in Peart (supra) as it applies to this motion: When read and applied in the context of the jurisprudential history of Court of Claims practice, that which is new law in Lepkowski is not, as contended by the defendant, an implicit pronouncement by the Court of Appeals of a theretofore unexpressed substantive limitation on the State’s historic waiver of sovereign immunity to be applied ex post facto, but rather a clearly expressed recognition by the Court of Appeals for the first time that the provisions of Court of Claims Act § 11 (b) governing the content of a claim have consistently *465 been, and should continue to be, applied to effectuate their purpose, which is that the content of a claim must be stated with sufficient definiteness to enable the State to investigate.
Accordingly, the defendant’s motion is denied.

. Judges of this court have reached different results regarding the defendant’s interpretation of Lepkowski. Some have held, specifically relying upon Lepkowski, that the failure to include the total sum claimed in a claim deprives the court of subject matter jurisdiction (see Shabazz v Goord, Ct Cl, Sept. 13, 2004, Claim No. 109114, UID No. 2004-009-53; Kolnacki v State of New York, 10 Misc 3d 781 [Ct Cl 2005]; Cepeda v State of New York, Ct Cl, May 9, 2005, Claim No. 110547, UID No. 2005-009-028; Matter of Estate of Anwar v State of New York, 9 Misc 3d 1127[A], 2005 NY Slip Op 51813[U] [2005]), or stated that Lepkowski requires that result (see McCabe v State of New York, Ct Cl, June 24, 2004, Claim No. 108925, UID No. 2004-015-413; Signature Health v State of New York, Ct Cl, May 16, 2005, Claim No. 107802, UID No. 2005-015-014). Other judges have come to a contrary conclusion (see Hamilton v State of New York, 11 Misc 3d 650 [Ct Cl 2005]; Legall v State of New York, 10 Misc 3d 800 [Ct Cl 2005]; Stewart v State of New York, Ct Cl, Sept. 24, 2004, Claim No. 107914, UID No. 2004-013-047).
The Appellate Division recently rejected the defendant’s interpretation of Lepkowski in Morris v State of New York (27 AD3d 282 [1st Dept 2006]).

. Nor, as in Peart, is there any merit to the defendant’s motion on the ground that the alleged failure of the claim to comply with section 206.6 (b) of the Uniform Rules for the Court of Claims (22 NYCRR) deprives the court of subject matter jurisdiction over the claim.

. See also Letter from Nathan R. Sobel, Secretary to the Assembly Minority Leader, to Charles Poletti, Counsel to the Governor, 40 years earlier, commenting upon legislation which became chapter 775 of the Laws of 1936, in which he states that the principal purpose of that statute was “to reduce the number of claim bills annually presented to the Governor” by clarifying various provisions of the Court of Claims Act (Bill Jacket, L 1936, ch 775, at 7). Chapter 775 was drafted by Nathan Sobel at Charles Poletti’s request (id.); among its provisions it added the words “and the total sum claimed” to the statutory requirements of the content of a claim.