OPINION OF THE COURT
Philip J. Patti, J.
Upon the papers, and after hearing Laurie Styka Bloom, Esq., on behalf of third-party defendant, and Thomas G. Ramsay, Assistant Attorney General, on behalf of defendant and third-party claimant, the motion is denied and the cross motion is granted.
This matter has been the subject of significant motion practice on two prior occasions. In motion No. M-64418 and cross motion No. CM-64689, decided on April 12, 2002, I compelled the acceptance of an answer to the third-party action, and, anticipating the instant motion practice, deferred the central question of whether service of a notice of intention to file a claim triggers the obligation to notify an insurance carrier, and the ultimate question of whether the insurer should be permitted to disclaim coverage to defend and/or indemnify the State of New York. Subsequent motion practice addressed verification and jurisdictional issues (Turner v State of New York, 2 Misc 3d 370 [2003], cited by the Court of Appeals in Lepkowski v State of New York, 1 NY3d 201, 209 n 5 [2003]).
The underlying claim, as limited by that motion practice, alleges that claimant Anthony Turner, an employee of Horizon Roofing & Sheet Metal, Inc., was working on the roof of the New York State School for the Blind in Batavia, New York, when, on July 14, 1999, at approximately 10:00 a.m., he fell from a ladder causing injuries to his back and ear. The current proceedings revolve around the third-party action by the defendant State of New York against Transcontinental Insurance Company (TIC), and TIC’s motion seeking summary judgment dismissing the third-party claim and a declaration as a matter of law that no coverage, either to defend or indemnify, is owed by TIC to the State. Needless to say, the State vigorously opposes the relief and cross-moves for a declaratory judgment that TIC has the very obligations which it is seeking to avoid.
A brief historical retrospective, summarizing mostly undisputed facts, is helpful. TIC issued an owner/contractor protective liability policy to the State (motion, exhibit A) covering the period in question. The primary issue before me is whether the State satisfactorily complied with the notice provisions of that policy, more specifically its duty in the *254 event of an “occurrence” to notify TIC “as soon as practicable,” or if a “claim” is made or “suit” is brought to provide written notice “as soon as practicable.” A notice of intention to file a claim (NI) was served upon the State on October 12, 1999. On March 1, 2000,. the State sent letters, enclosing a copy of the NI to claimant’s employer, Horizon, and to the insurance agency which provided the certificate of insurance, Amsure Associates, Inc. (cross motion, exhibits E and F, respectively). Horizon forwarded the same to its insurance agent, who allegedly received the same on March 6, 2000 and on March 8 forwarded the NI to TIC/CNA (motion, exhibit D).
It is also clear that, on or about July 23, 1999, a representative of New York State’s Office of General Services did inform Continental Casualty Company that indeed there had been an accident, and then Continental, or one of its companies, set up a workers’ compensation file (cross motion, exhibit C to affidavit of John D. Lewyckyj).
Part of the sparring between the parties addresses the purported failures and errors committed by each. A scorecard delineating the missteps here is not necessary, although, suffice it to say, neither party appears before me with pristine hands. First, I am persuaded by the State’s undisputed assertions that Amsure Associates, Inc. acted as an agent for CNA, in part because of its inclusion on the CNA Web site, and because a broker may be held to have acted as the insurer’s agent where there is some evidence of “action on the insurer’s part, or facts from which a general authority to represent the insurer may be inferred” (Rendeiro v State-Wide Ins. Co., 8 AD3d 253, 253 [2004]). Thus, the certificate of insurance (cross motion, exhibit A), provided to the State by Amsure, the insurance agent for Horizon and acting as well as agent for the CNA family of insurance companies, listed the owner’s protective policy and its number, 1080107778, and named Continental Casualty Company as the company affording such coverage. And, indeed, that is the company name and policy number on the accident notification provided by Mr. Lewyckyj on July 23, 1999. However, that was not the correct insurance company name, as the actual coverage under that policy number was provided by Transcontinental Insurance Company (the same TIC in front of me today).
*255 TIC asserts that there is arguably a question of fact as to whether it received timely notice of the occurrence,[1] but that the State supplied late notice of the claim or suit, and thus its disclaimer is valid and enforceable for that reason alone, irrespective of the notice of occurrence. Whether the notification should have gone to a workers’ compensation carrier or to the owner’s protective liability coverage company is a rather dubious question, since the certificate of insurance provided inaccurate information. The putatively reserved question of fact whether it was ever received is belied by the affidavit of Robert Laning, an employee of Horizon, who appends an acknowledgment of initial report of loss from CNA dated July 20, 1999 (cross motion, exhibit B to his affidavit). Moreover, it would appear that such notice satisfied the requirement in the endorsement containing New York changes (motion, exhibit A; reply affirmation in support of cross motion, exhibit D).
Needless to say, the State’s actions, or the excuses for its inaction, are hardly defensible. While there is some reasonable explanation for a short period of time while the State ascertained whether the underlying accident occurred at an insured location for the State of New York, and/or the School for the Blind under the State Dormitory Authority’s insurance, here “the contact person at the Dormitory Authority was away from her office on extended leave” (affirmation in support of cross motion IT 17), and it took until February 9, 2000 for the Dormitory Authority to return the claim (sic — means NI) to the Attorney General’s Office for proper routing (cross motion, exhibit D [iii]). The State’s apologia in this regard merely acknowledges these undisputed facts, which do not excuse the period of time that a response awaited the return of the employee at the Dormitory Authority from extended leave.
TIC argues that it is not an issue of prejudice or not, but rather whether there has been compliance with the terms and conditions of the policy. It asserts that the insurance contract requires, as a condition precedent to coverage, that TIC be provided with notice “as soon as practicable.” It is TIC’s contention that while there may have been timely notice of the occurrence through the submission of information that found its way to the workers’ compensation file, the delay between October *256 12, 1999, the date of service of the NI upon the State, and the eventual provision of the NI by the State to TIC on or about March 8, 2000, vitiates the insurance contract and it owes no coverage to the State. TIC provides a host of cases which examine a range of periods of time in which the courts of New York have found untimely notice, thereby vitiating the insurance contracts therein.
But here, rather than examining the time it took to provide notice, and the State’s excuses for failing to forward the NI for nearly five months after it was served, my decision turns more on what constitutes a claim or suit, and frankly whether an NI is encompassed by the contractual duty to notify of “any demands, notices, summonses or legal papers received in connection with the claim or ‘suit.’ ”
TIC has now entered the arcane world of the Court of Claims. I hold that a notice of intention to file a claim is not a legal paper in connection with a claim or suit, within the meaning of the insurance contract. Clearly, it is not a pleading (Turner v State of New York, 2 Misc 3d 370 [2003], supra), is not a document which is filed with the Clerk of the Court of Claims, does not generate any answer, and merely serves to extend the time to commence a claim in this court. Despite its inclusion within the penumbra of CPLR 3022 by the Court of Appeals in Lepkowski v State of New York (1 NY3d 201, 209 [2003], supra), it is not a pleading and I believe that its inclusion there was a judicially created solution to a hypertechnical procedural morass and was dicta.
A notice of intention professes nothing more than its plain and unequivocal title, to wit, articulating an intention to file and serve a claim, but it is not a condition precedent; it may be obviated by a party directly commencing an action; it does not generate a responsive pleading, and it does nothing more than extend a claimant’s time to commence a suit or claim. Lest it go unnoticed, and it almost universally has, a singular exception exists in Court of Claims Act § 17-a, which permits the examination of a “claimant” who has served a notice of intention. In the only reported case in the more than 15 years since its passage,[2] First Church in Albany of Refm. Church in Am. v State of New York (192 Misc 2d 66 [2002]), now Presiding Judge Richard E. Sise denied the State’s motion to compel an exami *257 nation pursuant to section 17-a because there is no authority for a motion in the absence of a civil judicial proceeding which has not already been commenced.
Thus, just as TIC observes that it is not a question of prejudice or the lack thereof, but rather a literal compliance with the terms of the insurance contract, I am wedded to Court of Claims nomenclature and jurisprudence, despite TIC’s attempted protestation that a “claim” as understood in the context of this insurance policy is markedly different from a “claim,” the legal process embraced by the Court of Claims Act.
“ ‘Because suits against the State are allowed only by the State’s waiver of sovereign immunity and in derogation of the common law, statutory requirements conditioning suit must be strictly construed’ (Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]; see Lepkowski v State of New York, 1 NY3d 201, 206-207 [2003])” (Kolnacki v State of New York, 28 AD3d 1176, 1176 [2006]; lv granted 30 AD3d 1116 [2006]).
Here, there was no suit or claim at the time of service of the NI, and thus TIC will not be relieved of its contractual obligation to defend and indemnify the State in this matter.
TIC strongly urges that the question of prejudice is not relevant in the claim at bar, relying upon New York’s adherence to the no-prejudice rule that remains in less than a handful of jurisdictions (see e.g. Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp., 31 NY2d 436 [1972], but query whether this rule has been ameliorated in Matter of Brandon [Nationwide Mut. Ins. Co.], 97 NY2d 491, 497-498 [2002]). Cannot an analogy be made between Brandon (supra at 497), where the Court of Appeals declined to extend the “no-prejudice” rule (“because [the insurer] depends on notices of legal action to awaken it in SUM matters where the notices of claim do not at first get its attention”), and the instant matter, where notification to Continental Casualty Company, utilizing the owner’s protective liability policy No. 1080107778, was provided by mail to CNA dated July 23, 1999 (motion, exhibit K)? This analogy may strengthen, as an outside claims specialist for CNA Commercial Insurance, one Thomas D. Schindler, in a document contained within the workers’ compensation records provided by TIC (cross motion, exhibit C-17) on July 27, 1999, immediately anticipated that a putative Labor Law claim under section 240 *258 was possible and an investigation at that time was initiated, including witness interviews, inspection and photographing of the accident scene.
Argo Corp. v Greater N.Y. Mut. Ins. Co. (4 NY3d 332 [2005]) is not to the contrary as there the insurer was not notified of the suit until 14 months after service of the complaint, until six months after service of the default motion, until more than three months after default was entered and until almost three months after service of the note of issue, but there was a summons and complaint, the clear initiation of a lawsuit. We do not have the same clarity here. Moreover, the Court noted that
“Brandon did not abrogate the no-prejudice rule and should not be extended to cases where the carrier received unreasonably late notice of a claim. The facts here, where no notice of claim was filed and the first notice filed was a notice of lawsuit, are distinguishable from Brandon where a timely notice of claim was filed, followed by a late notice of lawsuit, and distinguishable from Rekemeyer, where an insured gave timely notice of the accident, but late notice of a SUM claim” (Argo Corp. v Greater N.Y. Mut. Ins. Co., 4 NY3d 332, 339-340 [2005], supra).
I reject TIC’s invitation to hold that the mere fact that the State made excuses or explained the reasons for the period of nearly five months before it forwarded the NI, and the fact that it did forward the NI, in and of themselves, constitute an acknowledgment or admission of the State’s contractual obligations. Even were I to deem an NI to be a legal paper received in connection with a claim or suit, I am not prepared to declare as a matter of law that the nearly five-month delay vitiates the “as soon as practicable” provision of the insurance contract or that the period in and of itself is unreasonable. Certainly, as TIC has exhaustively researched and provided to the court, there is a range of periods of time that have been held to be unreasonable as a matter of law, as short as 10 days, but ranging beyond the nearly five months here to 14 months. I realize, of course, that the courts rule upon the periods of delay as they appear ad hoc in each litigated case. But the Court of Appeals has not delineated a set of objective standards or rigid time measurements that as a matter of law I am obligated to follow. Rather, I must apply the circumstances at hand to the existing case law, and frankly make a subjective assessment. One might look at the terminology that says “as soon as practicable” and say that *259 one day after service of a NI is practicable enough. Of course, first there must be a determination if indeed there was a State project, whether there was any insurance coverage, and numerous other factors preceding any sort of notification to the insurer. Where the current circumstances fall on a continuum is subjective.
In Rose v State of New York (Ct Cl, filed July 24, 1998, Silverman, J., Claim No. 94522, Motion Nos. M-57179, CM-57260 [cross motion, exhibit L], affd 265 AD2d 473 [1999]), a notice of intention to file a claim was not forwarded to the insurer for a period of about 13 months after the accident and about 12 months after the State had been served. In that case, where the contractual language similarly articulated the forwarding of legal papers in connection with a claim or suit as soon as practicable, Judge Silverman held that the insurer had been given timely notice because the injured party therein had commenced an identical suit in Supreme Court against the construction company, which was insured by the same insurer that was the subject of the impleader action. The claim at bar demonstrates a compatible parallel, where the notice of occurrence was sent on July 23, 1999, some nine days after the accident (Lewyckyj affidavit, exhibit C), and where a representative of CNA, an outside claims specialist, addressed the very Labor Law claim later alleged in the instant claim (cross motion, exhibit C-17).
At the end of the day, I have highly sophisticated litigants before me. The State routinely and continuously lets contracts for which it requires insurance protections, and TIC and its umbrella organization CNA routinely afford insurance protection by issuing policies where the State of New York or one of its entities or authorities is named as an additional insured. The insurance policy does not define what a claim or suit is, and I am left to interpret those contractual terms in the context of the litigation before me. I am struck with the notion that TIC, and any of the CNA companies who do business with the State, should be aware that the Court of Claims has exclusive jurisdiction over such lawsuits, and that the insurance contracts should define, as is so easily done in contracts of adhesion, the terms “suit” or “claim” specifically with respect to contracts with New York State entities to specify that a notice of intention to file a claim is a paper or document connected with a suit or claim and which the *260 State must forward “as soon as practicable.” Such specificity in an insurance contract would clarify the obligations of the parties. This contract did not, and that vagary should not serve to the detriment of the State.
Accordingly, upon the papers, and after hearing the parties, TIC’s motion is denied and the State’s cross motion is granted. TIC is thus required to defend and indemnify the State at the trial of this claim commencing on July 24, 2006.

. While TIC purports to reserve its right to argue at trial that it did not receive notice of the occurrence, this decision and order resolves that issue. My determination here will not be revisited at the trial scheduled to commence on July 24, 2006.

. This includes the Official Reports, as well as the Court of Claims Web site (<www.nyscourtofclaims.state.ny.us>) containing a word-searchable database of all decisions of import since approximately March 2000.