[802 NE2d 1094, 770 NYS2d 696]

Richard T. Lepkowski et al., Appellants, v State of New York, Respondent.

Argued October 16, 2003; decided December 18, 2003

## POINTS OF COUNSEL

*Lisa M. King,* Albany, and *William P. Seamon* for appellants. I. The claim, which sets forth the nature of the claim, date and place of the claim and method of calculating damages, meets all the pleading requirements of Court of Claims Act § 11 (b). (*Finnerty v New York State Thruway Auth.,* 75 NY2d 721; *Heisler v State of New York,* 78 AD2d 767; *Lurie v State of New York,* 73 AD2d 1006; *Buckles v State of New York,* 221 NY 418; *De Marco v State of New York,* 43 AD2d 786, 37 NY2d 735; *Brown v State of New York,* 89 NY2d 172; *Cobin v State of New York,* 234 AD2d 498; *Harper v State of New York,* 34 AD2d 865; *Bowles v State of New York,* 208 AD2d 440; *Santos v State of New York,* 291 AD2d 851.) II. The claim was properly verified. (*Martin v State of New York,* 185 Misc 2d 799; *Betzler v Carey,* 109 Misc 2d 881; *Matter of Maniscalco v Power,* 4 AD2d 479, 3 NY2d 918; *Hood v State of New York,* 113 Misc 404; *SLG Graybar v Hannaway Law Offs.,* 182 Misc 2d 217; *Air N.Y. v Alphonse Hotel Corp.,* 86 AD2d 932; *Matter of Ames Dept. Stores v Assessor of Town of Concord,* 102 AD2d 9.) III. The Appellate Division committed several reversible errors in reaching its conclusion that the State could not investigate this claim. (*Leon*

*v Martinez,* 84 NY2d 83; *Goshen v Mutual Life Ins. Co.,* 98 NY2d 314; *Taylor v State of New York,* 36 AD2d 878; *Loeb v Tanenbaum,* 124 AD2d 941; *Rosenman Colin Freund Lewis & Cohen v Edelman,* 165 AD2d 533; *Cannon v State of New York,* 163 Misc 2d 623; *Mobil Health v State of New York,* 149 Misc 2d 784; *Vicidomini v State of New York,* 21 AD2d 837; *Calco v State of New York,* 165 AD2d 117.)

*Eliot Spitzer, Attorney General,* Albany (*Kathleen M. Treasure, Caitlin J. Halligan* and *Daniel Smirlock* of counsel), for respondent. The claims must be dismissed because claimants have not complied with the pleading requirements of the Court of Claims Act. (*Alston v State of New York,* 97 NY2d 159; *Finnerty v New York State Thruway Auth.,* 75 NY2d 721; *Buckles v State of New York,* 221 NY 418; *Glassman v Glassman,* 309 NY 436; *Lichtenstein v State of New York,* 93 NY2d 911; *Dreger v New York State Thruway Auth.,* 81 NY2d 721; *Thomann v City of Rochester,* 256 NY 165; *Ponsrok v City of Yonkers,* 254 NY 91; *Swierkiewicz v Sorema N.A.,* 534 US 506; *Conley v Gibson,* 355 US 41.)

**OPINION OF THE COURT**

READ, J.

We are asked whether the claims in this consolidated action comply with the substantive pleading requirements of section 11 (b) of the Court of Claims Act. We conclude that the claims do not comply because they fail to allege the times when and the place where the claims arose, any items of damage or the total sum claimed. We further conclude that the State must follow the steps in CPLR 3022 in order to preserve any objection that a claim or notice of intention does not comply with the verification requirement in section 11 (b).

I.

Claimants are public employees working in executive branch agencies in civil service titles allocated salary grade 23 or higher. They are all included within the Professional, Scientific and Technical Services Unit (PS&T), which is represented by the Public Employees Federation (PEF) for purposes of collective bargaining with the State of New York.

On July 21, 1994, the *Lepkowski* claimants and other PS&T employees sued the State in federal court, seeking unpaid overtime pay, liquidated damages and reasonable attorneys' fees, to all of which they claimed entitlement under the federal Fair Labor Standards Act (FLSA). In February 1996, the

plaintiff employees moved for partial summary judgment on liability and the State cross-moved for summary judgment to dismiss. The State contended, among other things, that the Eleventh Amendment guarantee of state sovereign immunity deprived the federal courts of subject matter jurisdiction. The United States District Court for the Northern District of New York rejected the argument, and held that the State was liable for overtime compensation to certain of these employees on account of "a minor aspect of one of [the State's] policies" (*Close v State of New York*, 1996 WL 67979, *11, 1996 US Dist LEXIS 1748, *34 [ND NY, Feb. 13, 1996]).[1]

While the case was pending in District Court, however, the United States Supreme Court handed down *Seminole Tribe of Fla. v Florida* (517 US 44 [1996]), which significantly altered prior understandings of Congress' authority to abrogate the states' Eleventh Amendment immunity. In light of *Seminole*, the State succeeded when it again sought dismissal on Eleventh Amendment grounds (1996 WL 481550, 1996 US Dist LEXIS 12330 [ND NY, Aug. 19, 1996]), and the United States Court of Appeals for the Second Circuit affirmed (125 F3d 31 [1997]).

On January 22, 1998, roughly five months after the Second Circuit's decision, the *Lepkowski* claim was filed in the Court of Claims. The claim, which mimics the dismissed federal FLSA complaint, alleges that the employees worked over 40 hours in unspecified work weeks from July 1992 to the present; it does not identify where the claims arose, itemize damages or indicate the total sum sought. One individual claimant verified the claim,

---

1. Pursuant to the collective bargaining agreement between the State and PEF as well as the Rules of the Comptroller, employees holding positions allocated salary grade 23 or higher were not paid overtime compensation for hours worked over 40 in a given work week. Although these employees were considered salaried and therefore ineligible for overtime compensation, their pay was nonetheless potentially subject to deductions for minor disciplinary infractions, court appearances as a party to an action, military service and absences less than one day. The employees argued that as a result, the State violated the FLSA's salary basis test for determining whether an employee qualifies as a bona fide executive, administrative or professional employee exempt from the FLSA's overtime provisions; and was required to compensate them for overtime hours worked. The District Court Judge held that the partial-day docking, court appearance and military service provisions of the salary basis test were invalid in the public sector, but that the disciplinary penalties provision applied. He accordingly determined that the State's policy to dock these employees' pay for minor disciplinary infractions removed them from the FLSA overtime exemption unless they were lawyers, physicians or certain computer operators.

to which is attached a list of 377 claimants with their home addresses.

On February 19, 1997, claimants in *Abelson* served the Attorney General with a notice of intention to file an FLSA claim in the Court of Claims on behalf of 390 PS&T employees. The *Abelson* claim, filed on January 21, 1998, alleges that claimants worked more than 40 hours in unspecified work weeks since April 1994, and does not identify where the claims arose, itemize damages or indicate the total sum sought. One individual claimant verified *Abelson* on behalf of all claimants, who listed their home addresses and identified the state agencies for which they worked.

By order filed on January 28, 1999, the Court of Claims consolidated *Abelson* into *Lepkowski*, finding that consolidation would allow for more efficient discovery since 148 of the claimants were included in both cases. In June 2001, the State moved to dismiss on various grounds, including failure to comply with both the substantive pleading and the verification requirements of Court of Claims Act § 11 (b). This provision prescribes in relevant part that

> "[t]he claim *shall state* the time when and place where such claim arose, the nature of same, and the items of damage or injuries claimed to have been sustained and the total sum claimed . . . The claim and notice of intention to file a claim shall be verified in the same manner as a complaint in an action in the supreme court" (emphasis added).

In a decision and order filed on September 14, 2001, the Court of Claims denied the State's motion to dismiss on section 11 (b) grounds, concluding that both claims were sufficiently detailed to fulfill section 11 (b)'s substantive pleading requirements, and were properly verified within the meaning of CPLR 3020 (d) because the verifiers had knowledge of the facts and were united in interest with the other claimants. On the State's cross appeal,[2] the Appellate Division, with two Justices dissenting, reversed and granted the State's motion to dismiss (302 AD2d 765 [3d Dept 2003]).

---

**2.** The Court of Claims granted the State's motion to the extent of dismissing those portions of the *Lepkowski* and *Abelson* claims which sought declaratory and CPLR article 78 relief; and dismissing as untimely those *Lepkowski* claims accruing more than six months before the claim's filing, and those *Abelson* claims accruing more than six months before service of the notice of intention. Claimants appealed so much of the court's decision and order as applied the six-month statute of limitations in Court of Claims Act § 10 (4). They

In the Appellate Division's view, "[w]hile the claims . . . satisfactorily state the nature of the relief sought by claimants, they completely fail to provide the times when and the place where such claims arose, any items of damage or the total sum claimed" as required by section 11 (b) (302 AD2d at 766). These omissions were not remedied by any access that the State might have to this information from its own records because "the sufficiency of a claim rests solely upon the assertions contained therein, and [the State] is not required to go beyond the claim in order to investigate" (id.). Further, the record before the Court "belie[d] a claim that claimants' work hours were a matter of public record readily ascertainable by [the State]" (id. at 766-767). Finally, the Appellate Division concluded that while the claimants might be united in interest, "there is no evidence that the two claimants who verified the claims are acquainted with the factual premises for the remaining . . . claimants' entitlement to overtime compensation" (id. at 767).

In the opinion of the two dissenting Justices, however, claimants complied with the substantive pleading requirements of section 11 (b) by alleging the "proverbial where, when and how" of their claims in enough detail for the State to "conduct a meaningful investigation regarding its potential liability" (id. at 768); and the State waived any objection to defective verification by virtue of its failure to take timely action under CPLR 3022 (id. at 769). Claimants now appeal to us as of right (CPLR 5601 [a]).

## II.

The State's waiver of immunity from suits for money damages is not absolute, but rather is contingent upon a claimant's compliance with specific conditions placed on the waiver by the Legislature (see Court of Claims Act § 8 [specifying that the State waives its immunity from liability and action "provided the claimant complies with the limitations" of article II of the Court of Claims Act, which includes section 11]; see also Alston v State of New York, 97 NY2d at 163). Further, "[b]ecause suits against the State are allowed only by the State's waiver of sovereign immunity and in derogation of the common law, statu-

withdrew this appeal following our decision in Alston v State of New York (97 NY2d 159 [2001] [holding that under the terms of the waiver of sovereign immunity in Court of Claims Act § 8, the State retained its immunity as to claims not complying with the time limitations in Court of Claims Act § 10 (4), upon which the waiver was conditioned]).

tory requirements conditioning suit must be strictly construed" (*Lichtenstein v State of New York*, 93 NY2d 911, 913 [1999], quoting *Dreger v New York State Thruway Auth.*, 81 NY2d 721, 724 [1992]). As relevant here, section 11 (b) places five specific substantive conditions upon the State's waiver of sovereign immunity by requiring the claim to specify (1) "the nature of [the claim]"; (2) "the time when" it arose; (3) the "place where" it arose; (4) "the items of damage or injuries claimed to have been sustained"; and (5) "the total sum claimed."[3]

Claimants fulfilled section 11 (b)'s requirement to specify "the nature of [the claim]." They asserted that each named claimant was a past or present state employee; was in the PS&T bargaining unit; was assigned to a civil service title allocated grade 23 or higher; had worked overtime; was required to be paid overtime compensation pursuant to the FLSA; and was not paid this overtime compensation. They did not, however, adequately allege the remaining elements required by section 11 (b).

As for "the time when" the claims accrued, the *Lepkowski* claimants specified July 1992 and continuing to the present, and the *Abelson* claimants specified April 1994 and continuing to the present.[4] All that the State may guess from these allegations is that some or all of the 377 *Lepkowski* and 390 *Abelson* claimants worked some number of hours in excess of 40 in some or all of the work weeks over many months and years. This is insufficiently definite "to enable the State . . . to investigate the claim[s] promptly and to ascertain its liability under the circumstances," which is the guiding principle informing section 11 (b) (*Heisler v State of New York*, 78 AD2d 767, 767 [4th Dept 1980]).

Claimants assert in their brief that the "place where" their claims arose is their various work locations. These are not specified. *Lepkowski* includes the claimants' names and home ad-

---

3. By contrast, while CPLR 3017 (a) requires a complaint to contain a demand for the relief sought, CPLR 3017 (c) for many years has provided that the complaint in a medical or dental malpractice suit or in an action against a municipality shall *not* state the amount of money damages sought. Just recently, the Legislature amended section 3017 (c), which now prohibits the complaint in a personal injury or wrongful death action from setting forth the amount of money damages sought (*see* L 2003, ch 694, § 1, eff Nov. 27, 2003).

4. As noted earlier, the Court of Claims dismissed as untimely those claims accruing more than six months before the *Lepkowski* claim was filed (i.e., before July 23, 1997) and more than six months before the notice of intention was served in *Abelson* (i.e., before August 19, 1996).

dresses, but does not identify the state agency or department for which each claimant worked or in any other way particularize where any claim arose. In addition to names and home addresses, *Abelson* identifies the agency or department for which each claimant worked, but not a primary work location. For those claimants employed in agencies or departments that maintain offices in multiple locations, *Abelson* reveals little more than that their claims arose somewhere within the state's borders.

As for "the items of damage or injuries" and the "total sum" sought, the claims are similarly silent. Claimants allege only that they "seek recovery of all unpaid overtime compensation for all hours worked over 40 hours in a work week and not compensated at one and one-half times the regular rate."

Claimants contend that the State can easily ascertain from its personnel records exactly when and where each claim arose and how much their claims are worth; however, this is not the State's burden. The Court of Claims Act does not require the State to ferret out or assemble information that section 11 (b) obligates the claimant to allege (*Cobin v State of New York*, 234 AD2d 498, 499 [2d Dept 1996]). Moreover, we agree with the Appellate Division that, as a matter of fact, the record does not establish that the State possesses detailed time records for claimants for the time periods covered by this litigation. State employees holding positions allocated salary grade 23 or higher were not required to record actual hours worked on their time sheets until the 1999-2003 collective bargaining agreement between the State and PEF took effect.

As noted earlier, claimants first pressed their FLSA claims in federal court; however, the substantive pleading requirements in the Court of Claims differ substantially from the rules for pleading a complaint in federal court (*see* Fed Rules Civ Pro rule 8 [a] ["A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of (jurisdictional grounds), (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks"]). Here, claimants have recycled their federal complaint into a claim without refashioning its elements to conform with section 11 (b)'s substantive pleading requirements, which condition the State's waiver of sovereign immunity. These claims were required, at the very least, to specify the state agency or department for which each claimant worked; the primary work location for each claimant;

those work weeks in which each claimant worked overtime; the actual number of hours of overtime worked by each claimant during these work weeks; and the total sum of damages sought by each claimant as unpaid overtime as of the date of filing.

Since these claims are jurisdictionally defective for nonconformity with section 11 (b)'s substantive pleading requirements, we need not reach the questions raised by the parties regarding verification. In light of the proliferating Court of Claims cases on the subject of section 11 (b)'s verification requirement, however, we consider it advisable to dispel the gathering confusion about whether or under what circumstances CPLR 3022 bears on the matter.[5]

---

**5.** See *Martin v State of New York* (185 Misc 2d 799 [Ct Cl 2000] [holding generally that section 11 (b) makes verification a nonwaivable jurisdictional predicate for suit in Court of Claims]); *Vogel v State of New York* (187 Misc 2d 186 [Ct Cl 2000] [distinguishing *Martin* and holding that objection to claim as untimely because of an unverified notice of intention is waived unless raised with particularity as provided for in Court of Claims Act § 11 (c)]); *Jacobs v State of New York* (193 Misc 2d 413 [Ct Cl 2002] [suggesting that while an unverified claim must be dismissed, inadequate or improper verification is not similarly fatal]); *Price v State of New York* (2003 NY Slip Op 51086[U] [Ct Cl, May 15, 2003] [disagreeing generally with *Martin* and reviewing relevant case law and legislative history of 1990 amendment of section 11, but nonetheless dismissing unverified claim because of Appellate Division decisions in *Graham v Goord* (301 AD2d 882 [3d Dept 2003] [affirming dismissal of an unverified claim reviewed upon claimant's application for filing fee reduction]) and *Lepkowski*]); and *Turner v State of New York* (2 Misc 3d 370 [Ct Cl 2003] [endorsing distinction between absent and defective verification and suggesting that defective verification of claim is waived if defendant fails to comply with CPLR 3022, but that this provision may not apply to defective notice of intention because a notice is not a pleading]). The Court of Claims' on-line database of decisions includes at least another half-dozen recent opinions exploring various implications of treating section 11 (b)'s verification requirement as a nonwaivable jurisdictional prerequisite of the court's subject matter jurisdiction (*see* <www.nyscourtofclaims.state.ny.us>). This spate of decisions has not gone unnoticed (*Court Laments Rigidity of Verification Requirements But Deems Itself Bound and Dismisses Claim Though State Suffered No Prejudice Whatever*, 138 Siegel's Practice Review, at 3 [Aug. 2003]; *When State Attempts to Avoid Its Own Promise to Disregard Minor Verification Mistake, Court's Patience Is Exhausted and State Gets Estopped*, 138 Siegel's Practice Review, at 3 [Aug. 2003]; *Failure to Verify Claim Proper Brings Dismissal in Court of Claims Even Though Notice of Intention Was Verified*, 107 Siegel's Practice Review, at 3 [Apr. 2001]). The shift in historic Court of Claims practice is not entirely uniform either, however, which further confuses matters for the practicing bar and pro se claimants (*see e.g. Rivera v State of New York* [Ct Cl, Nov. 26, 2001, Motion No. M-64077, McNamara, J.] [rejecting argument that verification is nonwaivable jurisdictional requirement and finding CPLR 3022 procedure applicable]).

Pursuant to CPLR 3022, "when a pleading is required to be verified, the recipient of an unverified or defectively verified pleading may treat it as a nullity provided that the recipient 'with due diligence' returns the [pleading] with notification of the reason(s) for deeming the verification defective" (*Matter of Miller v Board of Assessors*, 91 NY2d 82, 86 [1997]). We have never specified a uniform time period by which to measure due diligence (*id.* n 3). A defendant who does not notify the adverse party's attorney with due diligence waives any objection to an absent or defective verification.

■ Section 11 (b) requires the claim and notice of intention to be verified *"in the same manner* as a complaint in an action in the [S]upreme [C]ourt" (emphasis added). "Manner" is commonly understood to mean "[t]he way in which something is done or takes place; method of action; mode of procedure" (9 Oxford English Dictionary 324 [2d ed 1989]). Because the Legislature has mandated that verification "take[ ] place" in the Court of Claims following the same "method of action" or "mode of procedure" employed for an action in Supreme Court, there is no basis for treating an unverified or defectively verified claim or notice of intention any differently than an unverified or defectively verified complaint is treated under the CPLR in Supreme Court. Section 11 (b) therefore embraces CPLR 3022's remedy for lapses in verification.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and GRAFFEO concur.

Order affirmed, with costs.