Wright v State of New York (2025 NY Slip Op 01564)

Wright v State of New York

2025 NY Slip Op 01564

Decided on March 18, 2025

Court of Appeals

Halligan

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 18, 2025

No. 20 

[*1]Chi Bartram Wright, Respondent,
v
State of New York, Appellant.

Jeffrey W. Lang, for appellant. 
Seth A. Dymond, for respondent. 
CHILD USA, amicus curiae.

HALLIGAN, J.

Section 11 (b) of the Court of Claims Act (the Act) sets forth substantive pleading requirements intended to ensure that the State can promptly investigate a claim against it and ascertain its potential liability. Because these requirements are conditions the Legislature has placed upon the State's waiver of sovereign immunity, they are strictly construed, and a claim against the State must comply with them. Another provision of the Act requires that a notice of claim against the State be filed within ninety days of its accrual. In enacting the Child Victims Act (the CVA), the Legislature amended this rule to allow claims alleging child sexual abuse to be filed within a two-year window, even if they would otherwise be untimely and therefore barred (see L 2019, ch 11, § 7, codified at Court of Claim Act § 10 [10]; CPLR § 214-g, as amended by L 2020, ch 130, § 1).
Claimant Chi Bartram Wright brought his claim under the CVA, alleging that the State is responsible for abuse that occurred when he was a child, nearly four decades ago. We conclude that the CVA did not alter the substantive pleading requirements set forth in section 11 (b) and, applying those requirements, that Wright's claim lacks the requisite specificity to proceed.
I.
Wright commenced this action against the State, the Office of General Services, and the State University of New York (collectively the State) in the Court of Claims in July 2021. He alleges that between 1986 and 1990, when [*2]he was approximately 12 to 15 years old, he was repeatedly sexually assaulted by numerous men at the State-owned performing arts center in Albany known as "The Egg." He brought this action under the CVA, seeking to recover seventy-five million dollars in damages based on various theories of negligence by the State, including negligent hiring, retention, supervision, and direction.
Wright alleges that he was subjected to "sexual[ ] abuse," "fondling and molesting," "repeated[ ] sexual[ ] assault[ ]," "inappropriate relationships," and "lewd and lascivious conduct." Although the claim does not allege the number or frequency of such incidents, it states that a "majority of the[ ] incidents occurred at the premises [of The Egg], more specifically in the bathrooms, stairwells, tunnels, boiler room, and Kitty Carlisle Hart Theater." The claim also states that the perpetrators "sexually abused other boys at the premises," and that "the sexual abuse of [Wright] and other children was open and obvious."
The claim does not identify who abused Wright [FN1]. It states that Wright "was raped and sexually abused as a child by numerous men in multiple incidents" and that "[t]he rape and sexual abuse were perpetrated . . . by both employees of the State as well as members of the general public." According to the claim, the State employees included "teacher[s], coach[es], and counselor[s]" who "induc[ed] Wright . . . to look up to [them] and to place absolute trust and confidence in [them]" and "used their position[s] of power and authority . . . to sexually abuse [Wright] and other boys." The claim further asserts that the men who assaulted Wright were "members of the public" and "agents, servants and/or employees of the State" who were "known among the community and the children as [ ] sexual predator[s]" and had "reputation[s] as sexual predators to young children."
Wright alleges that the State is "responsible for the injuries that [he] incurred." He asserts that the State's "negligence and recklessness caused these numerous abusers to have access to children, including children on the premises, despite its knowledge that [the] abusers sexually abused children and/or had the propensity to do so." It further alleges that the State "allow[ed] pedophiles to be around young children including [Wright]," to "meet them with no other adults present," and "to travel with children with no other adults present." In addition, the State "fail[ed] to provide proper security at the premises"; "to investigate the background, character and fitness of [the] abusers to serve as employees"; "to have [ ] systems or policies in place and a procedure to monitor, and supervise activities going on in the bathrooms at the premises and in other areas of the premises such as the audience of [T]he Egg"; "to take prompt action to remove [the] abusers"; "to take prompt action regarding complaints and suspicions of sexual molestation"; and "to adopt policies and procedures to protect children." Finally, the claim asserts that the State "engaged in a plan of action to cover up incidents of the sexual abuse of minors by their employees and abusers and [to] prevent disclosure, prosecution, and civil litigation including but not limited to failing to report incidents of abuse to law enforcement or child protection agencies," and that it "conceal[ed] abuse they had substantiated."
After serving discovery demands on Wright, the State moved to dismiss the claim for failing to comply with section 11 (b) of the Act. It argued that it was unable to investigate Wright's allegations, and that the Court of Claims therefore lacked subject matter jurisdiction, because his claim failed to provide the specific time when the alleged abuse occurred or when the claim accrued and to allege with sufficient detail the nature of the claim and the State's conduct with respect to it. Wright opposed the motion.
The Court of Claims granted the State's motion (Wright v State of New York, Ct Cl, May 4, 2022, Leahy-Scott, J., claim No. 136589). The court determined that the CVA does not relax the requirements of section 11 (b), and that a claim brought under that statute must plead the date of the underlying conduct with sufficient definiteness to enable the State promptly to investigate its claim and to ascertain its potential liability. It concluded that Wright's claim did not clear this bar because it did not set forth any specific dates upon which the alleged abuse occurred.
The Appellate Division reversed (221 AD3d 132 [3d Dept 2023]). After noting that the purpose of section 11 (b) is to ensure "a sufficiently detailed description of the particulars of the claim to enable [the State] to investigate and promptly ascertain the existence and extent of its liability" (id. at 134 [internal quotation marks omitted]), the Court considered the relationship between the CVA and the Act. It explained that "[t]he CVA did not . . . modify the pleading requirements set forth in [section 11 (b)]," and that courts therefore had "the difficult task of determining, on a sui generis basis, whether claims filed decades after the fact are sufficiently specific to enable the State to [*3]investigate" (id. at 135). The Court concluded that the four-year period alleged in Wright's claim satisfied section 11 (b) because "the events are alleged to have occurred several decades ago, when [Wright] was a child," and "it is not clear how providing exact dates, as opposed to a range of years, would better enable the State to conduct a prompt investigation of the subject claim" (id. [internal quotation marks and brackets omitted]). The Appellate Division further determined that the allegations were "sufficient to provide [the State] with an indication of the manner in which [Wright] was injured and how [the State] was negligent" (id. at 136 [internal quotation marks and ellipsis omitted]), and denied the State's motion to dismiss the claim.
The Appellate Division granted the State's motion for leave to appeal to this Court, certifying the following question for our review:
"Did this Court err, as a matter of law, in reversing, on the law, the order of the Court of Claims which granted defendant's motion to dismiss the claim, denying the motion and remitting the matter to the Court of Claims for further proceedings not inconsistent with this Court's decision?"
We reverse and answer the certified question in the affirmative.
II.
The Court of Claims Act waives the State's immunity from suits for money damages, but only insofar as "the claimant complies with [its] limitations" (Court of Claims Act § 8; see also Alston v State of New York, 97 NY2d 159, 163 [2001]). "The Act contains several conditions that must be met in order to assert a claim against the State" (Kolnacki v State of New York, 8 NY3d 277, 280 [2007]). "Because suits against the State are allowed only by the State's waiver of sovereign immunity and in derogation of the common law," those conditions "must be strictly construed" (Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]). Accordingly, a claimant who does not meet "the literal requirements" of the Act's conditions has "not properly commenced their action[ ]" (Lichtenstein v State of New York, 93 NY2d 911, 913 [1999]).
Section 11 (b) directs that a claim "shall state the time when and place where such claim arose, the nature of the same, the items of damage or injuries claimed to have been sustained and . . . the total sum claimed" (Court of Claims Act § 11 [b]). We have explained that section 11 (b) "places five specific substantive conditions upon the State's waiver of sovereign immunity" (Lepkowski v State of New York, 1 NY3d 201, 207 [2003]). It requires a claim to "specify (1) 'the nature of the claim'; (2) 'the time when' it arose; (3) the 'place where' it arose; (4) 'the items of damage or injuries claimed to have been sustained'; and (5) 'the total sum claimed' " (id. [brackets omitted]). Because the Act conditions the State's waiver of immunity upon compliance with these requirements, "[t]he failure to satisfy any of the conditions is a jurisdictional defect" mandating dismissal (Kolnacki, 8 NY3d at 281; cf. Alston, 97 NY2d at 163 [concluding that Court of Claims Act § 10 [4] is jurisdictional]).
The "guiding principle informing section 11 (b)" is that a claim must be "[]sufficiently definite 'to enable the State . . . to investigate the claim promptly and to ascertain its liability under the circumstances" (Lepkowski, 1 NY3d at 207, quoting Heisler v State of New York, 78 AD2d 767, 767 [4th Dept 1980] [alteration omitted]). Consistent with that principle, we have emphasized that "the State is not responsible for uncovering information that the claimant is required to allege under section 11 (b)" (Kolnacki, 1 NY3d at 208, citing Lepkowski, 1 NY3d at 208). That is so even if "the State can easily ascertain [that information] from its [ ] records" (Lepkowski, 1 NY3d at 208).
Two of our decisions provide useful guidance on what section 11 (b) requires. In Lepkowski, two groups of public employees sought unpaid overtime compensation. The claim provided the employees' civil service salary grade and bargaining unit, and stated that the alleged violations covered "July 1992 and continuing to the present" for one group, and "April 1994 and continuing to the present" for the other (id. at 207). We held that the nature of the claim was adequately pleaded, but the remaining elements of section 11 (b) were not. As for the "time when" the claim accrued, we determined that merely stating the month and year when the claims began to accrue was not sufficient, even though the claim alleged that the State had employment records from which it could ascertain those details and was required by federal law to maintain this data (see id. ["All that the State may guess from these allegations is that some or all of the . . . claimants worked some number of hours in excess of 40 in some or all of the work weeks over many months and years."]). We also dismissed the claim in Kolnacki, a personal injury case, for failing to specify the "total sum claimed," while recognizing that damages in such cases may be "harder to quantify at the outset" (84 NY3d at 281).
Claims brought under the CVA, such as Wright's, may present a distinct challenge. The Sponsor's Memorandum accompanying the CVA explains that "restrictive statutes of limitations" often expire before "survivors [*4][of child sexual abuse] report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 007). Likewise, the Assembly Memorandum acknowledges "the unique character of sex crimes against children, which can have a multitude of effects upon victims, including being justifiably delayed in otherwise timely taking actions against their abusers and/or those who facilitated in their abuse" (Assembly Mem in Support of 2015 NY Assembly Bill A10600).
The CVA sought to address this problem by providing a two-year window within which adult survivors could file child sexual abuse claims that would otherwise be time-barred (see CPLR § 214-g, as amended by L 2020, ch 130, § 1). With respect to actions against public institutions, which are subject to section 10's ninety-day notice of claim requirement (see Court of Claims Act § 10 [3]), the Legislature amended the Act by adding a subdivision that exempts "any claim to recover damages for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense . . . committed against a child less than eighteen years of age" from section 10's time limits (id. § 10 [10]).
As the Appellate Division recognized, even with this amendment to section 10's timing requirement, it may still be difficult for victims of abuse that occurred decades ago to plead their claim with the specificity section 11 (b) requires. In light of this concern, Wright urges us to relax the pleading requirements for CVA claims. But we do not have the leeway to exempt claims brought under the CVA from the limitations the Act imposes on the State's waiver of immunity. It has long been settled that a waiver of sovereign immunity "must be clearly expressed" (Goldstein v State of New York, 281 NY 396, 403 [1939] [internal quotation marks omitted]), and that "waiver of immunity by inference [is] disfavored" (Sharapata v Town of Islip, 56 NY2d 332, 336 [1982]). The CVA lacks any indication, let alone a clear expression, that the Legislature intended to exempt CVA claims from section 11 (b)'s conditions; indeed, it does not amend or even mention the Act's pleading requirements. That contrasts sharply with the Legislature's decision to amend section 10 by waiving the notice of claim requirement for claims revived by the CVA (see L 2019, ch 11, § 7, codified at Court of Claims Act § 10 [10]). We also note that the Legislature has adopted different pleading requirements for claims of unjust conviction and imprisonment (see Court of Claims Act § 8-b), confirming that it knows how to adjust the conditions on the State's waiver of immunity for certain classes of claims when it seeks to do so. Accordingly, we must apply section 11 (b)'s requirements to a claim brought under the CVA in the same manner we would apply them to any other claim against the State.
III.
Applying this standard, we conclude that Wright's claim lacks the specificity section 11 (b) requires. Because the allegations are too spare to enable the State promptly to investigate and ascertain the existence and extent of its liability, the claim suffers a jurisdictional defect and therefore must be dismissed.
The claim lacks critical information about the abusers. It alleges that the perpetrators included teachers, coaches, counselors, and perhaps other employees of the State, but it does not explain whether those employees were Wright's teachers, coaches, and counselors, or why, as a child, he was in their company multiple times between 1986 and 1990. The claim also alleges that members of the public were responsible for some of the abuse he suffered, but it does not explain why Wright came into contact with those persons as a child, the context in which adult supervision of any particular activity allegedly should have been provided, or the extent to which the State bore responsibility for Wright's contact with the abusers. Nor does the claim adequately allege what repeatedly brought Wright to The Egg over a four-year period in the late 1980s, or why, once on the premises, he frequently engaged with both members of the public and State employees.
In the absence of such information, the State cannot promptly investigate the claim and determine its liability under Wright's theories of negligence. Indeed, the allegations included in Wright's claim are even less detailed than those we found insufficient in Lepkowski and Kolnacki. The State is left to "guess" whether at any point during the four-year period alleged in the claim it owed some duty to Wright and, if so, whether it breached that obligation (Lepkowski, 1 NY3d at 201). But it "is not the State's burden . . . to assemble information" not included in a claim so that it may promptly investigate and assess its liability (id. at 208). Section 11 (b) places that burden on the claimant.
Although we recognize the difficulties attendant to recollecting the details of any abuse that might have occurred decades ago, we must abide by the conditions set forth in the Act. The claim lacks the specificity section 11 (b) demands, and so it must be dismissed.
***
Accordingly, the order of the Appellate Division should be reversed, with costs, defendant's motion to dismiss the claim granted, and the certified question answered in the affirmative.
Order reversed, with costs, defendant's motion to dismiss the claim granted and certified question answered in the affirmative. Opinion by Judge Halligan. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Cannataro and Troutman concur.
Decided March 18, 2025

Footnotes

Footnote 1: The claim uses both plural and singular pronouns when referring to the abusers (i.e. "him" and "them"). When quoting the claim, we use plural pronouns.