J.F. v State of New York (2025 NY Slip Op 25101)

[*1]

J.F. v State of New York

2025 NY Slip Op 25101

Decided on April 4, 2025

Court Of Claims 

Vargas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on April 4, 2025
Court of Claims 

J.F., Claimant,

against
The State of New York, Defendant.

Claim No. 136487

For Claimant:
Herman Law
By: Jenny Rossman, Jessica Sparacino, and Benjamin Silver, Esqs.
For Defendant:
Hon. Letitia A. James, Attorney General of the State of New York
By: Philip Dillon, Esq., Assistant Attorney General, and Brittney Ortiz, Esq., Legal Fellow

Javier E. Vargas, J.

By Claim filed on June 17, 2021, Claimant J.F. (hereinafter "claimant") commenced the instant action against Defendant, State of New York (hereinafter "State"), pursuant to the Child Victims Act (see CPLR 214-g), alleging that he was repeatedly sexually abused and assaulted, while under the State's custody, at the Kingsboro Psychiatric Center in Brooklyn, New York (hereinafter "Kingsboro"), an institution owned, operated and controlled by the State. Specifically, the Claim alleged that "in approximately 1992, when he was approximately fourteen (14) years old, claimant was admitted to Kingsboro" for inpatient psychiatric treatment, where he was sexually abused several times a week for "six (6) months" by Dr. Alvin Smith, the now-deceased former Chief of Children and Youth Services at Kingsboro (Claim, at 9, ¶¶ 36-40). Despite his supposed complaints to Kingsboro staff, the State was allegedly negligent in failing to take any action to investigate and protect claimant from Dr. Smith, who continued to abuse him until his discharge later that year.
The State filed its Verified Answer on August 13, 2021, denying all allegations of negligence or culpability and asserting several affirmative defenses, including the tenth affirmative defense stating "that the claim fails to comply with Court of Claims Act § 11(b) by failing to include the dates or any adequate description of the manner in which the incident occurred, and therefore, there is no proper claim over which the Court has jurisdiction" (Ct. Exh. [*2]2). Consistent with that defense, in May 2022, the State moved for the dismissal of the Claim, under CPLR 3211(a)(2), as failing to satisfy the jurisdictional pleading requirements of Court of Claims Act § 11(b) in that the claimant does not sufficiently particularize "the date, time and place of the complained incident[s]" of sexual abuse. The States noted that while claimant affirmed that the sexual abuse occurred in 1992, further discovery uncovered that he was in fact hospitalized at Kingsboro from May 26, 1994 until September 12, 1994. In opposition, the claimant maintained that he had provided sufficiently specific facts, given his infancy and the decades that had passed since the abuse occurred, for the State to investigate and ascertain liability. This Court agreed.
By Decision and Order filed September 20, 2022, the Court (Vargas, J.) denied the State's motion to dismiss and granted claimant's cross-motion to amend the Claim, finding that the "Claim as originally pleaded cannot be declared defectively insufficient for failure to set forth a precise date and time," and permitted the amendment of the Claim to reflect the actual year of hospitalization (J.F. v State of New York, 76 Misc 3d 1082, 1086 [Ct Cl, Vargas, J., 2022]). Disclosure proceedings between the parties then ensued.
Following discovery proceedings, certification and the filing of a Note of Issue, the matter was tried in person before the undersigned on March 24-26, 2025, in the Court of Claims. At the commencement of the matter, on March 24, 2025, the State orally moved for renewal of the prior motion to dismiss, pursuant to CPLR 2221(e)(2), citing the Court of Appeals' recent decision on Wright v State of New York (___NY3d___, 2025 NY Slip Op 01564, March 18, 2025), as "a change in the law that would change the prior determination" by mandating the strict construction to the Court of Claims Act §11(b) required elements. The undersigned reserved decision on the motion with leave to renew following the completion of the case.
In his case in chief, the claimant then presented his testimony, medical records, and documentary evidence in support of his claims, as well as the testimony of two witnesses, Dr. Kenneth Diamond, a psychologist who once worked at Kingsboro in the 1980s, and Mr. John Holmes, of the State's Office of Children and Youth Services, who were cross-examined by the State. Now 46 years old, the claimant's tightly wound testimony began by relating his difficult life, albeit in an intact family, his "rambunctious"[FN1]
 and energetic nature, his lack of educational attainments, his drug use and criminal convictions, his two sons outside of marriage, and the death of his father. As to the Claim's particulars, claimant testified that he entered Kingsboro first as an outpatient school student due to a history of attempted suicides in March to April 1994, when he was 14 years old. Then, after an incident where he was accused of successfully orchestrating the attack of another student, in May 1994, he was placed in inpatient care at Kingsboro, where he had his own room on the third floor of the "Boys Unit" of the main building. Apparently blaming his father for his hospitalization, claimant histrionically screamed out in court: "Happy Birthday, pops!" He remained at Kingsboro attending a special school and receiving inpatient treatment from May 1994 until his discharge in September 1994. 
While at Kingsboro, the detailed medical records as well as his testimony reflect that claimant was under the care of Dr. Mark Steven Owens, a psychiatrist at the adolescent facility. Only through claimant's testimony did we learn that Dr. Smith, occasionally treated him and first [*3]began touching him by "smack[ing his] butt" and patting his back during outpatient basketball games. He described Dr. Smith as a six-feet tall, muscular "Americanized Caribbean" with dark skin, a receding hairline, who was always "very well-dressed and reeked of Old Spice Cologne." Within days of him becoming inpatient, claimant testified that his first encounter with Dr. Smith occurred after taking his first shower, when Dr. Smith somehow showed up in his room while he was naked and draped a towel over him. About four days after that encounter, claimant explained that Dr. Smith frequently pulled him out of classes, therapy sessions and gym practice to take him to his large windowed office with a red couch in the main building, and gave him treats such as M&Ms, canned soda and allowed him to smoke cigarettes via the window in his office.
Although billed as therapy sessions where Dr. Smith would ask him brief questions about his family for about five minutes, claimant described that Dr. Smith sexually abused him by forcing claimant to perform oral sex upon Dr. Smith, as well as engaging him in a game of masturbation, called volcano, on several occasions. Claimant provided vivid detail in describing his encounters with Dr. Smith, the size of his manhood and his musk. Per claimant, Dr. Smith pulled him out of his classroom "at least two to three times per week" to engage in these sexual acts. After the end of his first sexual encounter with Dr. Smith, claimant testified that Dr. Smith told him that he knew where he lived and threatened to kill his family if he spoke about their encounters. These encounters with Dr. Smith became less frequent after his 16th birthday which was on August 11, 1994, allegedly because Dr. Smith lost interest in him. According to claimant, it was Dr. Smith who told him that he was going to be discharged, unless he was rude to any staffmember. Per claimant, he was called "teacher's pet" by other patients and "everybody knew," laughed and snickered at him for that.
With respect to actual or constructive notice to the State, the claimant testified that he informed Ms. Toland, the head of Kingsboro's outpatient aides, that Dr. Smith was "touchy feely" and "overly friendly" while he was at the outpatient school. Then, around June 1994, claimant maintained that he told Mr. James King, a counselor, that Dr. Smith is "touching [him] and doing things to" him, but that Mr. King told him "you have to play the game" if he wanted to be released soon, or he will be there forever. Around the same time, at the end of June 1994, claimant affirmed that he informed Dr. Owens during his regularly scheduled therapy that Dr. Smith "is gay," was doing stuff to him and "was making him uncomfortable." He ostensibly reported this to Dr. Owens about three times during his therapy sessions before August 1994, but no investigation, interview or anything happened as a result. His cross-examination by the State, interrupted by claimant's emotional outbursts and once running out of the courtroom, was completed on March 25, 2025.
The next witness, psychologist Dr. Diamond, provided sometimes fuzzy testimony about suspected sexual abuse he reported between an unrelated teacher and two of his patients during his Kingsboro employment in the 1980s, a decade before the incidents alleged here. He testified that Kingsboro wanted to silence him, demoted him from seeing patients and accused him of having "organic brain disease and making things up." Dr. Diamond testified that his reputation was eventually rehabilitated after a 1989 press exposé came to light about the prevalence of verbal and physical abuse, solitary confinement and sex between patients at Kingsboro. Relevantly herein, he affirmed about the good reputation of the "effeminate" Dr. Smith, who [*4]became employed at Kingsboro after its apparent reorganization in the early 1990s, but related that as an administrator, Dr. Smith did not see or treat patients and that his office was located in a separate "executive" building away from the inpatient building.
On March 26, 2025, the last witness to testify for claimant was Mr. Holmes, who provided limited testimony about the State protocols, policies and guidelines existing at the relevant time as to the mandatory reporting of allegations of sexual abuse at the facility. He also acknowledged that claimant's allegations of being uncomfortable with and touching by Dr. Smith, would have triggered a mandated report, an investigation, and the immediate physical separation of the parties involved during the investigation.
After the claimant rested, the State defended against the Claim with the testimony of one witness, claimant's treating psychiatrist, Dr. Owens, and extensive documentary evidence. A very professional and poised witness, Dr. Owens testified that he worked at Kingsboro with emotionally disturbed adolescents, including claimant, but that he could not personally remember him. Upon reviewing his medical notes, he acknowledged claimant as a patient he treated weekly or monthly in 1994. Dr. Owens explained the protocols required as a mandated reporter for reporting any incident or allegation of sexual improprieties involving his patients, including notifying the Administration for Children Services and even the police. Relevantly, Dr. Owens testified that Dr. Smith was the respectful, well-dressed and well-liked Director of Kingsboro, and never heard anyone allege that Dr. Smith had any reputation or propensity for sexual abuse of minors. Dr. Owens adamantly denied that claimant ever reported to him about any sexual abuse from Dr. Smith during either his outpatient or inpatient treatment. There was "no indication of that whatsoever." Nor was there any reason elicited from Dr. Owens as to why he would refuse to so report, since as a mandated reporter, he could lose his medical license or "be in jeopardy." 
At the conclusion of the trial, both parties recited oral summations and the State essentially renewed its oral motion to dismiss the Claim both under Wright and for failure to establish a prima facie case and claimant opposed it. The Court reserved decision and now grants the motion.
The Child Victims Act revived the time to commence civil actions against individuals and institutional actors based upon certain "conduct which would constitute a sexual offense" committed by them against children under the age of 18 years (CPLR 214-g; see S.H. v Diocese of Brooklyn, 205 AD3d 180, 186 [2d Dept 2022]; Pisula v Roman Catholic Archdiocese of NY, 201 AD3d 88, 98-99 [2d Dept 2021]). Although the New York Legislature amended Court of Claims Act § 10 to specify that the time limitations contained therein did not apply to claims brought pursuant to the Child Victims Act (see Court of Claims Act § 10[10]), the Legislature did not amend the substantive pleading requirements of Court of Claims Act § 11(b) as it relates to those claims (see James v State of New York, UID No. 2022-058-023 [Ct Cl, Leahy-Scott, J., Jan. 19, 2022]; González v State of New York, UID No. 2022-058-012 [Ct Cl, Leahy-Scott, J., Jan. 10, 2022]).
Specifically, the Court of Claims Act § 11(b) "places five specific substantive conditions upon the State's waiver of sovereign immunity by requiring the claim to specify (1) 'the nature of [the claim]'; (2) 'the time when' it arose; (3) the 'place where' it arose; (4) 'the items of damage of injuries claimed to have been sustained'; and (5) 'the total sum claimed'" (Lepkowski v State of [*5]New York, 1 NY3d 201, 207 [2003]; see Kolnacki v State of New York, 8 NY3d 277, 280 [2007]). "Because suits against the State are allowed only by the State's waiver of sovereign immunity and in derogation of the common law," those conditions "must be strictly construed" (Wright v State of New York., ___NY3d___, quoting Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]). 
In Wright, faced with a Child Victims Act claim that described the alleged sexual abuse in general terms without specific details about the abusers or the exact dates of the incidents, the Court of Appeals reiterated the principle that a claimant's failure to strictly comply with the abovementioned filing requirements deprives the Court of Claims of subject matter jurisdiction (see id.; Court of Claims Act § 8; Criscuola v State of New York, 188 AD3d 645 [2d Dept 2020]). The Court of Appeals dismissed that claim concluding that the CVA - with all its laudatory purposes - did not relax these filing requirements to enable the State's prompt investigation "and to ascertain its liability under the circumstances" (Lepkowski, 1 NY3d at 207, quoting Heisler v State of New York, 78 AD2d 767 [4th Dept 1980]). Consistent with that principle, "'the State is not responsible for uncovering information that the claimant is required to allege under section 11(b)' (Kolnacki, 8 NY3d at 280, citing Lepkowski, 1 NY3d at 208). That is so even if 'the State can easily ascertain [that information] from its [own] records' (Lepkowski, 1 NY3d at 208)" (Wright v State, 2025 NY Slip Op 01564).
Applying Wright as a threshold jurisdictional issue to the matter at bar, the State is correct that the Claim is jurisdictionally defective ab initio and unamendable pursuant to Court of Claims Act § 11(b). The record reflects that claimant timely filed his Claim against the State for sexual abuse and assault committed by a State employee at its institution. Specifically, the original Claim alleged that "in approximately 1992, when he was approximately fourteen (14) years old," claimant was sexually abused by Dr. Smith, despite his repeated complaints to other Kingsboro personnel. However, discovery of medical records revealed that claimant was in fact admitted to Kingsboro from May to September 1994. Thus, the Claim plainly alleges an incorrect date and year for the sexual abuse. Under Wright's strict construction standard, the Claim's failure to pinpoint the actual date of the abuse, even though the State could "ascertain it from its [own] records" (id.), did not meet Court of Claims Act §11(b)'s specificity requirements, and mandates dismissal of the Claim.
Even if it were to entertain the merits of the Claim presented at trial, the Court finds that claimant has nevertheless failed to meet his burden of proof under the Child Victims Act by a fair preponderance of the credible evidence. Claimant, who was medicated and suffering from mental illness, contends that Dr. Smith exploited his infancy and vulnerable condition by sexually abusing him during his inpatient treatment. Central to the Claim is that the State, through its Office of Mental Health and Kingsboro, owed a non-delegable duty to use reasonable care to protect the safety, well-being and health of claimant while he was under the State's care and custody. Claimant alleges that the duty was breached, among many, when the State failed to investigate, supervise and protect him from Dr. Smith's sexual abuse; failed to implement policies to protect children from sexual and physical abuse; and failed to adequately hire and train its employees and agents.
Generally, a Child Victim Act negligence action requires '"(1) a duty owed by the defendant to the plaintiff; (2) a breach thereof; and (3) injury proximately resulting therefrom"' [*6](J.B. v The Roman Catholic Diocese of Brooklyn, NY, 2022 NY Slip Op 34114[U] [Sup Ct, Kings County 2022], quoting Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]). To establish a prima facie case for negligent hiring, negligent retention or negligent supervision, the plaintiff/claimant must prove that the defendant employer hired the employee and knew or should have known at the time of hiring of the employee's propensity for the type of conduct which harmed the claimant (see Doe v Hauppauge Union Free Sch. Dist., 213 AD3d 809 [2d Dept 2023]; Doe v Intercontinental Hotels Group, PLC, 193 AD3d 410, 411 [1st Dept 2021]; Doe v Rohan, 17 AD3d 509 [2d Dept 2005]; KK v State of New York, UID No. 2013-032-008 [Ct Cl, Hard, J., Dec. 17, 2013]). Even prior to Wright, in evaluating claims alleging negligent hiring, supervision, training, and/or retention of a State employee who committed sexual assault against a claimant, courts had repeatedly held that the failure to plead the specific date(s) when the assault(s) occurred violates Court of Claims Act § 11(b), and mandates dismissal of the Claim (see Robin BB. v State of New York, 56 AD3d 932, 933 [3d Dept 2008]; James v State of New York, UID No. 2022-058-023; C.B. v State of New York, UID No. 2020-040-019 [Ct Cl, McCarthy, J., Apr. 29, 2020]).
While the Court acknowledges the sensitive nature of claims brought under the Child Victims Act, credibility remains a central issue in any case. The Court carefully assessed claimant's testimony at trial, his demeanor and affect while doing so. The believability and credibility of the claimant depends not only upon his demeanor but also on an overall evaluation of the consistency of his testimony and the manner in which it coincides with all the evidence (see Eberle v State of New York, UID No. 2024-053-008 [Ct Cl, Sampson, J., May 22, 2024]). During his direct examination, claimant displayed what appeared at the time to be a detailed recollection of events when responding to his attorney, albeit with episodes of overly emotional and somewhat histrionic outbursts. However, there were elements of his testimony on direct examination that did not sound plausible or unrehearsed. For example, claimant testified that Dr. Smith once gave him - who had attempted suicide on several occasions - a razor to trim his pubic hair, and would frequently remove him without permission from his classes and therapy sessions to sexually assault him at least "two to three times" every week for approximately five months, meaning over sixty times, which raised questions with the Court as to whether claimant was embellishing and exaggerating his testimony.
In the crucible of cross-examination, claimant's testimony revealed significant inconsistencies regarding key details, including the dates, frequency, location and nature of the alleged abuse. This Court finds that claimant's testimony was not credible, especially since he denied awareness that the allegations in his Supreme Court Complaint about the sexual acts were significantly inconsistent with what was expressed in the Claim and during his testimony. Indeed, during the trial, the attorneys stipulated that while the complaint only alleges three acts of masturbation in "a private office separate from the main [Kingsboro] facility" (Supreme Court Complaint, Deft. Exh. B, at 5, ¶ 31), the Claim alleges "at least several times per week" of "performing oral copulation" on each other's genitals and mutual masturbation for "five [5] months" (Ct. Exh. 1, at 9-10, ¶¶ 37, 39-40, 44). He also emotionally testified that Dr. Smith was his first sexual experience, but had told the hospital during intake that he was sexually active and practiced protected sex. Also, we learn on cross that claimant did not tell his parents about the abuse, even though his mother, father and sister visited him at Kingsboro religiously at least once [*7]per week, and repeatedly took him out for scheduled outings and weekend passes outside the hospital. Although claimant mentioned in direct that his sister was included in Dr. Smith's threats to kill the family, only his mother and father were mentioned at his deposition (see Deft. Exh. C at 136).
Nor did claimant introduce any medical record, forensic evidence or witness to corroborate his testimony that he was sexually assaulted several times by Dr. Smith in his windowed office that summer at Kingsboro. Aside from the inconsistencies regarding the location of Dr. Smith's office in another building, contemporaneous medical records do not reflect reports of abuse or emotional injury consistent with claimant's claims (see Doe v Intercontinental Hotels Group, PLC, 193 AD3d at 411). To the contrary, they reveal that claimant was a "sneaky" adolescent who "disrespect[ed] authority," and was constantly "teasing and hitting his peers" by calling them names, like "fa***t" and "retard" (Cl. Exh. 12, at 68, 73, 79, 80, 81, 86, 103, 105, 108, 110, 114, 119, 124, 127, 132). These daily notes could not be farther from the truth in indicating that he was the "teacher's pet" and teased for that reason. Nor do they reveal a single medical notation or comment by or about Dr. Smith, despite their numerous therapy sessions.
The testimony from treating medical professionals and staff at Kingsboro did not support his assertions of improper conduct by Dr. Smith. Claimant testified that he reported the sexual assaults by Dr. Smith to three employees: Ms. Toland, Mr. King, and Dr. Owens. Neither Ms. Toland nor Mr. King were deposed or testified at trial. Thus, all the allegations of actual and constructive notice to the State hinged on the shaky credibility of claimant. On the other hand, claimant's witness, Dr. Diamond, as well as Dr. Owens, testified that they never heard anyone allege that Dr. Smith had any reputation or propensity for sexual abuse of minors. In fact, Dr. Owens testified in a very credible manner that claimant never reported any sexual abuse to him from anyone . . . ever. No shred of objective evidence tended to impute such a devastating statement.
Upon review of all the evidence presented, the Court finds that claimant failed to credibly establish by a fair preponderance of the evidence that the State was negligent in hiring, retaining or supervising the State's employees at Kingsboro as no sufficient and credible notice of Dr. Smith's propensity to commit sexual abuse was provided (see Doe v Hauppauge Union Free Sch. Dist., 213 AD3d at 810-811; Doe v Rohan, 17 AD3d at 511-512). Nor did claimant sufficiently establish that the State negligently supervised or ignored his complaints as the Kingsboro records and witnesses' testimony indicate that proper protocols were followed, and there was no prior history of misconduct by Dr. Smith. The lack of corroboration, inconsistencies in testimony, and the absence of institutional negligence prevent a liability finding against the State (see N.X. v Cabrini Med. Ctr., 97 NY2d 247, 251 [2002]; Edmee v State of New York, UID No. 2020-015-083 [Ct Cl, Collins, J., October 20, 2020]).
In conclusion, the Court finds that claimant failed to meet his burden of proof under the Child Victims Act and applicable legal standards. Accordingly, the Court grants the State's motion to renew, and the prior Decision and Order filed September 20, 2022, denying the motion to dismiss, is vacated. Upon renewal, the State's motion to dismiss is granted, and the Clerk of the Court is directed to enter judgment dismissing Claim No. 136487.
Dated: April 4, 2025
New York, New York
Hon. JAVIER E. VARGAS
Judge of the Court of Claims

Footnotes

Footnote 1:Unless otherwise indicated, quoted language is to the Court's own trial notes.